STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronnie Lee WINTERS, Defendant-Appellant.†

Court of Appeals

*No. 2008AP910–CR. Submitted on briefs November 11, 2008.
—Decided March 10, 2009.*

**2009 WI App 48**

(Also reported in 766 N.W.2d 754.)

† Petition to review filed.

401

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ralph J. Sczygelski* of *Sczygelski Law Firm, LLC*, Manitowoc.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, *Marguerite M. Moeller*, assistant attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Ronnie Lee Winters appeals from a judgment entered after a jury found him guilty of first-degree reckless homicide, contrary to Wis. Stat. § 940.02(1) (2005–06).[1] He also appeals from an order denying his postconviction motion. Winters raises two claims of error: (1) the trial court erroneously exercised its discretion when it denied Winters's request to

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

testify on his own behalf the day *after* he had waived that right; and (2) the trial court erred in summarily denying his claim that trial counsel did not provide him with effective assistance; he contends the trial court should have held a *Machner*[2] hearing. We hold Winters waived his right to claim on appeal that the trial court erred when it denied his request to revoke the waiver of his right to testify because Winters failed to make an offer of proof at trial or in his postconviction motion. We further hold Winters has not established that an evidentiary hearing was required on his ineffective assistance of counsel claim. Accordingly, we affirm.

## BACKGROUND

¶ 2.   On January 14, 2006, shortly after midnight, Dennis Robinson, who was the maintenance supervisor of an apartment building located at 1143 North 29th Street in the City of Milwaukee, finished his paperwork and was walking to the building elevator. He heard Maurice Brown, resident of Apartment 106, which was around the corner from the elevator, say "I've got to go." Robinson heard another male voice respond:   "I need to talk to you" to which Brown responded "I got to go." As Robinson entered the elevator, he heard the other male voice utter an angry epithet and then heard a loud thud, followed by three bangs as if a beating had just occurred. Robinson, who had reached the parking garage in the elevator decided to go back to the first floor to investigate. He walked past Brown's apartment and the door was closed. Robinson proceeded to the front entrance of the apartment building, where he observed a white female, who he identified as Ann Lane. He then

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

heard a door slam coming from the location of Brown's apartment. Robinson observed a man, later identified as Winters, coming from that direction. Winters was moving quickly, but Robinson approached him and asked: "How are you doing?" Winters mumbled something in response, met up with Ann Lane and the two walked away from the apartment building.

¶ 3. Robinson then went back to Brown's apartment, found the door slightly ajar and observed Brown, who had been physically beaten, lying on the floor just inside the door. Police were called and medical assistance was summoned. Milwaukee Police Officer Paul Helminiak arrived shortly after 12:10 a.m. and Detective Brian Hardrath arrived a short time later. Brown was transported to the hospital where it was determined that he had suffered severe head trauma, brain swelling and facial fractures. He was pronounced dead on January 15, 2006, at 12:40 a.m. due to swelling of the brain.

¶ 4. Detective Shannon Jones was able to question Lane, who stated that she and her boyfriend Winters had gone to Brown's apartment building to buy and smoke cocaine. They then paid Brown $25 to leave his apartment so the two could have sex. Brown agreed. When he returned, Lane asked Brown for $10 back, but Brown refused to give it to her. At this point, she left Brown's apartment and walked toward the front door of the building. She saw Robinson in the hallway. She waited for Winters, who came out a short time later. Winters told Lane that when Brown stated he did not have the $10, Winters "punched him, he staggered, I punched him again and then I looked for the money." Lane indicated that she and Winters then took a bus to North 27th Street.

¶ 5. Winters was arrested and charged with second-degree reckless homicide. He pled not guilty. During a court hearing on August 2, 2006, the prosecutor advised the court that the State had extended a plea offer to Winters which would remain open until 10:00 a.m. on August 4, 2006. If the case was not resolved by plea bargain, the prosecutor intended to file an amended information charging Winters with first-degree reckless homicide.

¶ 6. Winters declined the plea offer and the amended information was filed. The case was tried to a jury September 5–7, 2006. The State presented its case by calling a variety of witnesses, including police officers, and citizen witnesses Robinson, Lane and Dannie Thomas.[3] Thomas was a prisoner who had been in the same jail pod with Winters from August 19, 2006 to September 6, 2006. Thomas advised authorities on September 2, 2006 that Winters told him in conversation that he was in jail for "bludgeoning someone to death." Thomas testified at trial to that effect.

¶ 7. On September 6, 2006, the State rested its case. Winters elected to waive his right to testify in his own defense. The court conducted a colloquy to ensure that Winters was waiving his right to testify knowingly, intelligently and voluntarily. Winters told the court that he decided voluntarily to waive his right to testify and that he had discussed this decision with his lawyer.

¶ 8. The court then read a stipulation to the jury regarding the police report on Robinson's testimony. The defense rested and then the State indicated it had no rebuttal. The jury was instructed that they had heard all the evidence. The trial court

---

[3] Thomas is referred to as "Dannie" or "Danny." The correct spelling of his name is not pertinent to disposition of this case.

indicated: "What's left is the closing instructions by the Court and the closing arguments by the attorneys. What we will do then is reconvene tomorrow morning at 9:30."

¶ 9. On September 7, 2006, Winters's trial counsel advised the court that Winters wanted to testify:

> Judge, when I got here at 9:30, I was advised that Mr. Winters wanted to testify. He had indicated that to the court staff and I've seen him twice now in the back. I didn't know until I arrived that he wanted to. He's aware we've rested. We are ready for argument, and I've advised him of my position which is not to do that and that it's a bad move, and he is — in essence, he's killing himself. So I've told him that on two occasions and he remains adamant about testifying.

The prosecutor immediately responded that he had released his rebuttal witnesses and did not know whether he could get them back. He stated he had doubts that the witnesses could be retrieved. He also advised the court that he had left at home the extensive cross-examination he had prepared for Winters. The court held proceedings off the record and when it went back on the record, the prosecutor explained that he had relied on Winters's waiver and would be prejudiced if the trial court allowed Winters to revoke his waiver and testify.

¶ 10. Defense counsel then recounted his conversation with Winters about testifying, indicating that Winters clearly stated the day before that he wanted to exercise his constitutional right *not* to testify. Defense counsel advised that "there is no doubt in my mind that [Winters] didn't want to testify yesterday," but Winters had since changed his mind. The court then ruled that Winters waived his right to testify and allowing him to

revoke that waiver would result in prejudice to the State. Accordingly, the trial court denied Winters's request.

¶ 11.  Winters then engaged in a direct conversation with the trial court asserting his constitutional right to testify on his own behalf and explained to the court:

> I understand that I waived my rights not to get on the stand yesterday and testify, but once I went back to my cell and did my own homework — my paperwork and studied, you know, there was some things that I need the jurors, the court to hear, and it's — like I said before, it's my constitutional right to testify on my behalf.

¶ 12.  The trial court indicated it had made its decision. The jury was brought in for closing arguments and instructions. They returned a verdict of guilty. Judgment was entered and Winters was sentenced to twenty-five years, consisting of eighteen years' initial confinement followed by seven years of extended supervision.

¶ 13.  In January 2008, Winters filed a postconviction motion asserting that his trial counsel provided ineffective assistance and that the trial court erred in refusing to allow Winters to revoke his waiver of his right to testify. The trial court denied the motion without holding an evidentiary hearing. Winters now appeals.

## DISCUSSION

### I. Waiver of Right to Testify.

¶ 14.  Winters complains that the trial court should have permitted him to revoke his waiver of his right to testify after he changed his mind overnight. He

also blames the trial court for not holding a hearing to allow him to provide an offer of proof as to what his testimony would be and whether it would have been prejudicial to the State. We are not convinced.

¶ 15.  We note that Winters does not challenge the colloquy wherein he knowingly, voluntarily and intelligently waived his right to testify. There is no dispute that Winters's waiver on September 6, 2006, constituted a valid waiver of his fundamental constitutional right to testify on his own behalf. *See State v. Arredondo*, 2004 WI App 7, ¶ 11, 269 Wis. 2d 369, 674 N.W.2d 647.

¶ 16.  The issue Winters presents is whether the trial court should have permitted him to withdraw his waiver on September 7, 2006 when he came to court indicating he changed his mind and wanted to testify. The State points out, however, that Winters's failure to seek an offer of proof at the time of trial or in the postconviction motion operates as a waiver of his right to have this issue decided. We agree with the State.

¶ 17.  WISCONSIN STAT. § 901.03(1) requires a party challenging the trial court's ruling excluding evidence to make an offer of proof:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and
>
> . . . .
>
>  (b) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

¶ 18.   Here, the trial court excluded evidence, namely Winters's own testimony. Accordingly, Winters was obligated based on WIS. STAT. § 901.03(1)(b) to make an offer of proof in order to assert error. It is undisputed that no attempt to make an offer of proof was made by Winters at the time the trial court made its ruling. It is Winters's position on appeal that the trial court was obligated to elicit the substance of Winters's testimony before denying his request to withdraw his earlier waiver. Winters is wrong.

¶ 19.   The obligation to make an offer of proof was on Winters, not on the trial court. *See generally State v. Brown*, 2003 WI App 34, ¶ 19, 260 Wis. 2d 125, 659 N.W.2d 110; *see also Arredondo*, 269 Wis. 2d 369, ¶ 20 n.2 (placing the responsibility to present evidence on the defendant). In *Brown*, Brown was charged with three felonies after he was hired to transport a family's belongings from Hartford, Wisconsin to Indianapolis, Indiana, but never arrived at the destination. *Id.*, 260 Wis. 2d 125, ¶¶ 2–3, 6. After a jury was selected, but before the trial began, Brown advised the court that if he decided to take the stand, he would testify that " 'I drove the truck there and I abandoned it for better prospects.' " *Id.*, ¶ 7. The State objected, arguing that his proposed testimony constituted alibi evidence and no notice of alibi had been given. *Id.* The trial court agreed with the State and offered to adjourn the trial so Brown could give proper alibi notice. *Id.*, ¶ 8. Brown declined the trial court's offer to adjourn, ultimately elected not to testify, and was convicted. *Id.*, ¶¶ 8–9, 11. On appeal, Brown argued that the trial court erred in excluding his testimony based on lack of notice of an alibi because the testimony he planned to give was not an alibi. *Id.*, ¶ 12. We affirmed the conviction, ruling

that Brown's failure to "request an opportunity to give his testimony outside the presence of the jury as an offer of proof" or "submit an affidavit or other statement detailing what he planned to say" doomed his claim. *Id.*, ¶ 19. Our reasoning was that: "Without a proper offer of proof, neither we nor the trial court can know with certainty what the contours of Brown's testimony would have been, or whether his testimony . . . would constitute an alibi defense." *Id.*

¶ 20. Although the facts in *Brown* are different from the instant case, the same legal principles apply. Here, Winters did not request an opportunity to give testimony outside the presence of the jury nor did he submit an affidavit detailing what he planned to say. Without such offer of proof, we cannot review Winters's claim on appeal that granting his request to revoke his previous waiver and allowing him to take the stand would not have prejudiced the State.

██

¶ 21. The determination of whether to allow a defendant to testify after the evidence has closed and after he has previously executed a valid waiver of his right to testify is left to the discretion of the trial court. *Arredondo*, 269 Wis. 2d 369, ¶¶ 11, 13, 19. "A trial court must consider 'whether the likely value of the defendant's testimony outweighs the potential for disruption or prejudice in the proceedings, and if so whether the defendant has a reasonable excuse for failing to present the testimony during his case-in-chief.' " *Id.*, ¶ 19 (citation omitted). Without an offer of proof, the trial court could not consider the potential for prejudice and neither can we.

¶ 22. Winters offers two excuses for not seeking an offer of proof: (1) his attorney did not want him to testify and thus made no effort to do an offer of proof;

and (2) the trial court failed to *sua sponte* inquire about the substance of his testimony. Neither excuse suffices here. With regard to the latter, as noted above, the trial court was not under any obligation in this instance to be the instigator of an offer of proof. With regard to the former, Winters is correct that his trial attorney made no effort to seek an offer of proof most likely because his counsel believed that taking the stand would not be in Winters's best interest; however, that moment was not Winters's only opportunity to submit an offer of proof. He could have done so via an affidavit when he filed his postconviction motion. He did not.

¶ 23. On appeal, Winters's explanation for his failure to file an affidavit was that he hoped the postconviction court would give him the opportunity to provide the substance of his testimony at an evidentiary hearing. Banking on an evidentiary hearing, Winters included in his postconviction motion only general categories in which he might testify:

1. Mr. Winters was either not at the scene when Maurice Brown received his injuries, or had been at Mr. Brown's residence at a time prior to the injuries being suffered.

2. Provide testimony that Ann Lane is susceptible to suggestion, and contradicting the incriminating testimony she provided both at court and in the written statement provided by Detective Shannon Jones.

3. That the jailhouse informant, Danny Thomas, is not to be believed, and that he is the type of person that would potentially conjure up testimony for consideration purposes.

4. To explain away other details of the state's case, and to essentially provide his own version of the facts from the dates in question.

Nowhere does Winters offer an affidavit attesting to the substance of his testimony. Will he testify that he was not at the scene? Will he testify that he was there but at an earlier time? He cannot have it both ways and the fact that postconviction counsel does not offer specifics is one reason why our supreme court favors the question and answer format for offers of proof over offers of proof *received through statements from defense counsel. See generally State v. Dodson,* 219 Wis. 2d 65, 74–77, 580 N.W.2d 181 (1998). Although there are some instances in which a statement from defense counsel may pass as an adequate offer of proof, *see id.* at 74 (when "evidentiary problem posed is easily resolved by statements of counsel"), this is not one of those situations.

¶ 24. Based on the only information submitted, we would have to speculate about the substance of the testimony Winters claims he would have given at trial, which we are not permitted to do. Accordingly, Winters's failure to provide an offer of proof either at trial or in the form of an affidavit in his postconviction motion prevents this court from considering whether the trial court erred in denying his request to withdraw his waiver of his right to testify.

## II. Ineffective Assistance/Evidentiary Hearing.

¶ 25. Winters's second complaint is that the trial court denied his postconviction motion without conducting an evidentiary hearing. He claims that trial counsel provided ineffective assistance by: (1) failing to adequately investigate whether the jailhouse informant, Dannie Thomas, actually had contact with Winters; (2) failing to object to the eyewitness Dennis

Robinson's identification of Winters; (3) failing to timely convey the State's plea bargain to Winters; and (4) failing to point out inconsistencies in the description of the perpetrator of the crime. We reject his claim.

¶ 26.   To sustain a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's errors were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one. *Strickland*, 466 U.S. at 697.

¶ 27.   An attorney's performance is not deficient unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To satisfy the prejudice prong, the defendant must demonstrate that counsel's deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In other words, there must be a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶ 28.   Whether counsel's actions constitute ineffective assistance is a mixed question of law and fact. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). "The trial court's determinations of what the attorney did, or did not do, and the basis for the

challenged conduct are factual and will be upheld unless they are clearly erroneous." *State v. Johnson,* 133 Wis. 2d 207, 216, 395 N.W.2d 176 (1986). The ultimate conclusion, however, of whether the conduct resulted in a violation of defendant's right to effective assistance of counsel is a question of law for which no deference to the trial court need be given. *State v. Harvey,* 139 Wis. 2d 353, 376, 407 N.W.2d 235 (1987). "[A]n accused is not entitled to the ideal, perfect defense or the best defense but only to one which under all the facts gives him reasonably effective representation." *State v. Harper,* 57 Wis. 2d 543, 557, 205 N.W.2d 1 (1973). There is a strong presumption that counsel acted reasonably within professional norms. *Pitsch,* 124 Wis. 2d at 637.

¶ 29.   If an appellant wants to have an evidentiary hearing on an ineffective assistance of counsel claim, he or she may not rely on conclusory allegations; if the claim is conclusory in nature, or if the record conclusively shows the appellant is not entitled to relief, the trial court may deny the motion without an evidentiary hearing. *State v. Bentley,* 201 Wis. 2d 303, 309–11, 548 N.W.2d 50 (1996). To obtain an evidentiary hearing on the ineffective assistance of counsel claim, the appellant must allege with specificity both deficient performance and prejudice in the postconviction motion. *See id.* at 313–18. Whether the motion sufficiently alleges facts which, if true, would entitle the appellant to relief is a question of law to be reviewed independently by this court. *Id.* at 310. If the trial court refuses to hold a hearing based on its finding that the record as a whole conclusively demonstrates that the defendant is not entitled to relief, our review of this determination is limited to whether the court erroneously exercised its discretion in making this determination. *Id.* at 318.

## A. Jailhouse Informant Dannie Thomas

¶ 30.    Winters first claims the trial court should have conducted an evidentiary hearing on his claim that trial counsel failed to adequately investigate whether Winters ever had contact with Thomas. Winters submitted an affidavit with his postconviction motion, swearing that he was never a cellmate with Thomas. The trial court rejected this claim because the State submitted evidence documenting that Winters and Thomas were in the same jail pod from August 19, 2006 to September 5, 2006, and thus could have had contact. Thomas testified that Winters had made the statement to him during that time period about "bludgeoning someone to death."

¶ 31.    The trial court found that Winters's denial was the only basis upon which he relied in making the assertion, and that if that was the only evidence to refute Thomas's testimony, Winters should have testified at trial to that effect. Submitting an affidavit after conviction, which he admits is self-serving and conclusory, is insufficient to establish ineffective assistance or the need for an evidentiary hearing on the claim. We agree with the trial court's assessment and adopt it as our own.

## B. Challenge Identification by Dennis Robinson

¶ 32.    Winters next argues that the trial court should have held an evidentiary hearing on his claim that trial counsel provided ineffective assistance by failing to object to Robinson's identification of Winters. Winters argued that he told police he did not want to participate in a lineup and that should have triggered

his right to have an attorney present at the lineup. Winters does not cite any law in support of this proposition. Rather, he cites three cases for the general proposition that a criminal suspect has a right to counsel at certain stages of potential lineup proceedings: *Kirby v. Illinois*, 406 U.S. 682 (1972); *State v. Taylor*, 60 Wis. 2d 506, 210 N.W.2d 873 (1973); and *United States ex rel. Hall v. Lane*, 804 F.2d 79 (7th Cir. 1986). All three of these cases say that the presence of counsel at a lineup is not required if formal charges have not yet been filed against the suspect. *See Kirby*, 406 U.S. at 688–89; *Taylor*, 60 Wis. 2d at 523; *Hall*, 804 F.2d at 80.

¶ 33.   Winters does not assert, nor is there anything in this record to suggest that formal proceedings had been initiated against Winters at the time of the lineup. Rather, the record reflects that the lineup occurred on February 16, 2006, and formal proceedings were initiated on February 20, 2006. Accordingly, he was not entitled to the presence of counsel at that time and the only legal citation he offers is inapposite. Winters's self-serving expression of not wanting to be in a lineup does not make the lineup illegal.

¶ 34.   In his postconviction motion, Winters's assertion on his claim of ineffective assistance was vague and conclusory. Moreover, our review of trial counsel's cross-examination of Robinson reveals that trial counsel did question Robinson about his identification of Winters and about the lineup. The cross-examination implied that Robinson's identification might not be entirely reliable. Counsel raised the identification through cross-examination rather than objection. This constituted reasonably effective representation. Accordingly, we hold that the trial court did not err in denying this claim without an evidentiary hearing.

*C. Conveyance of Plea Offer*

■■■■

¶ 35. Winters next asserts that the trial court erred in not holding an evidentiary hearing on his claim that trial counsel provided ineffective assistance for failing to timely convey the State's plea offer. The State argues in response that no hearing is required because Winters claimed in his postconviction motion that he would not have accepted the plea offer. Thus, if Winters had no intent of accepting the offer, he has failed to establish the prejudice prong of the ineffective assistance test. We agree with the State.

¶ 36. If Winters wanted the trial court to hold an evidentiary hearing, he had the obligation to assert sufficient facts, which if true, would entitle him to relief. *See Bentley*, 201 Wis. 2d at 310–18. To be entitled to relief on his claim that trial counsel failed to timely convey the plea offer, Winters would have to aver not only that trial counsel failed to convey the plea offer to him, but also that "there was a reasonable probability" that he would have accepted it. *See State v. Ludwig*, 124 Wis. 2d 600, 611, 369 N.W.2d 722 (1985). Without such an assertion, there is no possible "relief" the court can offer. If Winters would have turned the plea bargain down even if it had been conveyed earlier, he was not prejudiced.

*D. Inconsistencies in the Witnesses' Descriptions of the Perpetrator*

■■■■

¶ 37. Winters's final assertion of ineffective assistance is that counsel failed to point out the inconsistencies in the witnesses' descriptions of the perpetrator. He argues the trial court erred in failing to hold an

evidentiary hearing to question trial counsel as to why he failed to challenge the witnesses' descriptions of the perpetrator and point out that some were divergent from Winters's actual appearance. We reject this claim.

¶ 38.   The record reflects that Winters's postconviction motion alleged:

> Trial counsel failed to point out the inconsistencies in the descriptions of the perpetrator . . . . [A]s being only about five foot eight (5'8) and one-hundred-sixty-five (165) pounds, and being approximately in his late forties (40s) and early fifties (50s). Others described him as five foot eleven (5'11) to six foot (6) tall, weighing more than two hundred (200) pounds and being in his late thirties (30s) or early forties (40s).

As noted by the State, this assertion lacks specificity. Who gave these descriptions? Were they even witnesses at trial? After the State offered that response, Winters filed an affidavit providing additional specificity. The affidavit identified three individuals who had provided three different descriptions of Winters:   Derl D. Davis, Thomas and Robinson. In the affidavit, a fourth physical description was Winters's actual height and weight. The State points out that only Robinson identified Winters as being present near the crime scene. Davis did not testify at trial, but provided the identification of Winters to police after Davis heard Winters was involved in the murder in question. Thomas's description of Winters was not as the perpetrator of the crime, but based on his interaction with Winters while in the same jail pod when Winters told him about "bludgeoning someone to death."

¶ 39.   Based on the foregoing, we agree with the trial court's conclusion that trial counsel's failure to point out the discrepancies would not have made a difference in the outcome. The differing descriptions by

these witnesses, given their respective roles in the case were not significant to the ultimate result. The case against Winters was strong. Therefore, we are not persuaded that bringing the discrepancies to the attention of the jury would have made any difference. Accordingly, there was no need to conduct an evidentiary hearing on this claim.

*By the Court.*—Judgment and order affirmed.