COURT OF APPEALS
DECISION
DATED AND FILED

March 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1343-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CF3196**

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DERRICK DWAYNE CONN, SR.,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Derrick Dwayne Conn, Sr., appeals a judgment of conviction for first-degree sexual assault of a child, and an order denying his postconviction motion. He argues that trial counsel was ineffective for: (1) failing to object during the State's rebuttal argument; (2) failing to present witnesses to assist with his defense; and (3) failing to convey a plea offer prior to trial. We reject each of Conn's arguments and affirm.

## BACKGROUND

¶2 The State initially charged Conn with one count of first-degree sexual assault of a child, which carried a mandatory minimum of twenty-five years of initial confinement. According to the criminal complaint, on July 2, 2018, Conn put his finger inside nine-year-old Jenny's[1] vagina on two separate occasions in Conn's home—once in the basement and once in a bedroom. Subsequently, the State filed an amended information, which added a second count of first-degree sexual assault of a child.

¶3 The case proceeded to trial. Before the trial began, the State noted that an arraignment had not yet been held on the amended information. The State indicated that the amended information was filed with the final pretrial documents and "it was part of the offer that if … Conn wishes not to plead, that I would be adding that charge." Trial counsel stated that the amended information was not a surprise to the defense as Jenny had initially alleged two separate incidents.

---

[1] We use pseudonyms for the victim, her mother, and two family members in this opinion to protect the victim's identity pursuant to WIS. STAT. RULE 809.86(4). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      During the trial, the State called several witnesses, including Officer Louise Bray, Jenny, Ryan, Julie, Dr. Judy Guinn, Analyst Jessica Vande Walle, and Detective Reana Vrtochnick.  Conn did not testify or call any witnesses.

¶5      Officer Bray testified that she first interviewed Jenny on July 5, 2018.  During the interview, which was played for the jury, Jenny stated that Conn touched her vagina in both the basement and a bedroom of his house.  Subsequently, on November 18, 2018, Officer Bray conducted a second interview with Jenny.  In that interview, Jenny stated that Conn only touched her vagina in a bedroom, not in the basement.

¶6      Consistent with her second police interview, Jenny testified that Conn touched her while in a bedroom, but not in the basement.

¶7      Jenny's fourteen-year-old cousin, Ryan, testified that he was at Conn's house the night of the incident.  That night, Ryan was watching television in a bedroom with Jenny.  Conn said he was going to take Jenny into the basement to change her clothes and was gone for approximately thirty minutes.[2]  Jenny and Conn then returned to the bedroom, and Conn suggested that Ryan sleep in the basement.  After Ryan left the bedroom, he saw Conn peek his head out of the bedroom two or three times.

¶8      Jenny's mother, Julie, testified that on July 4, 2018, Ryan told her what he saw take place between Jenny and Conn.  Julie spoke to Jenny the following day, and Jenny said that Conn made her open her legs and he put his

---

[2] Initially, another family member, Blake, told Officer Louise Bray that he observed Conn taking Jenny into the basement to get clothes.  At trial, Blake denied that Conn took Jenny to the basement or that he talked about taking her to the basement.

finger in her vagina. Jenny said that she did not tell Julie about this because Conn told her to "keep [it] a secret" and if she told, he "was gonna whip her … A-S-S."

¶9 Dr. Guinn, a pediatrician, testified that Jenny was examined on July 5, 2018. Jenny did not have any injuries to her vagina, which was not uncommon for allegations of touching. Although Jenny had vaginal discharge, Dr. Guinn was not able to determine the cause.[3]

¶10 Analyst Vande Walle from the State Crime Lab testified that a "trace amount" of male DNA was found on an anal swab taken from Jenny. However, there was not enough DNA to conduct further analysis.

¶11 In addition, the State played portions of a recording of Conn's police interview. Detective Vrtochnick testified that when Conn was asked why he thought Jenny would make up the allegations, Conn said that Jenny's mother, Julie, was unhappy about a cake smashing incident.

¶12 During closing arguments, trial counsel argued that Conn was "wrongfully accused," and the State had "failed to meet [its] burden of proving him guilty of both of these charges beyond a reasonable doubt." In particular, the defense noted that there was no DNA evidence linking Conn to the assault and the male DNA "could be anyone's."

¶13 In rebuttal, the State addressed the DNA evidence, stating:

> Yes, there's also a discussion a lot about DNA and
> what has defense not even brought up until the end of their

---

[3] Dr. Guinn explained that there could be several reasons for Jenny's vaginal discharge, such as a routine bacterial infection or "if something is stuck up in the vagina[.]"

> closing argument is that male DNA was there, and we know whose male DNA is [sic].
>
> Yes, the analyst, it was too little which makes sense based on what our analyst told us about touch DNA, wasn't able to proceed but it was male, and the only evidence of a male that was in that area is [Conn].

The State further questioned why Jenny would fabricate the allegations and noted that Conn's explanation that "it's all being planned against him because of cake being put in a child's face" did not make sense.

¶14    The jury found Conn guilty of first-degree sexual assault for the conduct alleged to have occurred in the bedroom and acquitted him of the sexual assault for the conduct alleged to have occurred in the basement.

¶15    At the start of the sentencing hearing, the State noted that there was a plea offer prior to trial to eliminate the mandatory minimum.  The State indicated that it discussed the plea offer on the day of the trial with the defense and also inquired whether there was "any other type of plea that [Conn] would possibly take before proceeding to trial and [the State] was told no."  Trial counsel then informed the court:

> Judge, I think for what it's worth [Conn] is having some issues with the fact that there wasn't a plea extended to him shortly before the trial.  I did discuss….  I had an offer that was made originally back in July that would have been passed along to him.  For what it's worth, [Conn] was adamant about a trial the whole way through.

In response, Conn claimed that "I never was offered any plea.  I never heard of any plea until just now."

¶16    After further discussion, the circuit court indicated that the sentencing would proceed and the issue could be raised postconviction.  Conn was

sentenced to twenty-five years of initial confinement and ten years of extended supervision.

¶17     Conn filed a postconviction motion alleging that he received ineffective assistance of counsel when his attorney:  (1) failed to object to the State's rebuttal argument that the male DNA belonged to Conn; (2) failed to present witnesses who would have supported his defense that Jenny fabricated the allegations; and (3) failed to convey the plea offer to him prior to trial.

¶18     Following briefing and a ***Machner*** evidentiary hearing,[4] the circuit court denied Conn's postconviction motion.  The circuit court found that Conn did not establish deficient performance or prejudice in connection to each of his claims.  Conn now appeals.  Additional relevant facts will be discussed below.

## DISCUSSION

¶19     On appeal, Conn renews his ineffective assistance of counsel claims. Below, we first address the standard for ineffective assistance of counsel, and then we turn to each of Conn's specific claims.

### I.     Ineffective Assistance of Counsel

¶20     To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant suffered prejudice as a result.  ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, the defendant must show that counsel's actions or omissions "fell below an objective standard of

---

[4] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. We need not address both prongs of the test if the defendant does not make a sufficient showing on one of the prongs. *Id.* at 697.

¶21 A claim of ineffective assistance of counsel presents a mixed question of law and fact. *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. We will uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* Whether trial counsel's performance was deficient and prejudicial is a question of law that we review independently. *Id.*

### II.     State's Rebuttal Argument

¶22 Conn first argues that trial counsel should have objected when the State told the jury during its rebuttal argument that "we know" the male DNA found on Jenny belonged to Conn.

¶23 At the evidentiary hearing, trial counsel testified that he did not independently recall the State's comment about the DNA during the trial. However, after reviewing the comment in the postconviction motion, trial counsel did not believe there was grounds for an objection because "the State [was] free to make an argument about who they believe[d] the DNA could belong to."

¶24 The circuit court found that trial counsel did not perform deficiently because the State's argument was proper. In addition, the court found that Conn could not prove prejudice because the jury was instructed that closing arguments are not evidence.

¶25 We agree with the circuit court that trial counsel did not perform deficiently, and as a result, do not reach the question of prejudice. *See Strickland*, 466 U.S. at 697.

¶26 Conn contends that the State's argument was improper because the State argued facts which were not in evidence. *See State v. Smith*, 2003 WI App 234, ¶23, 268 Wis. 2d 138, 671 N.W.2d 854 (stating that "[a]rgument on matters not in evidence is improper" (citation omitted)). However, evidence was presented at trial that Conn touched Jenny's vagina and a trace amount of male DNA was located on her anus. The evidence thus supported the State's argument that it was Conn's DNA.

¶27 Conn also contends that the State's argument implied that he had the burden to show that the DNA did not belong to him. It did not. As stated above, the State simply argued that Conn was guilty based on the evidence. We do not read the State's argument to imply that Conn had the burden.

¶28 In addition, Conn suggests that the State was barred from arguing that the DNA was Conn's. The State has wide discretion in its closing argument, *see State v. Cockrell*, 2007 WI App 217, ¶41, 306 Wis. 2d 52, 741 N.W.2d 267, and we are not persuaded that this was an unfair or unreasonable argument. As stated above, evidence was presented that Conn touched Jenny's vagina and there was evidence that there was male DNA on Jenny's anus.

¶29 Thus, as the circuit court found, trial counsel did not perform deficiently because any objection to the State's closing argument lacked merit. Trial counsel cannot be ineffective for raising a meritless argument. *See State v. Wheat*, 2002 WI App 153, ¶23, 256 Wis. 2d 270, 647 N.W.2d 441.

### III.    Failure to Present Additional Witnesses

¶30    Conn next argues that trial counsel was ineffective for failing to present testimony from Brenda Woodley, his ex-wife, and Tenega Crockett, the mother of some of his children, to corroborate his account of why Jenny had motive to lie.

¶31    At the evidentiary hearing, Woodley testified that in June 2018, Conn and Julie had a disagreement.  Conn asked Julie not to smear birthday cake on his son's face, but she did it anyway.  Conn then told Julie "you about to get put the fuck out," meaning forced to leave the house.  Julie did not leave the party, but instead went upstairs in the home.  Everyone else at the party laughed because it was normal for Conn to try to kick people out.

¶32    Woodley believed Julie was upset after the incident.  Woodley received a text message from Julie that stated she was going to get Conn back. Woodley, however, did not interpret that text as a threat.  Crockett testified that prior to Conn's arrest, Woodley had shown Crockett text messages from Julie.

¶33    Trial counsel testified that Conn had told him that Jenny had fabricated the sexual assault allegations because of the birthday cake incident. Trial counsel testified that he spoke to Woodley, but he did not consider presenting this defense at trial because "it seemed extremely far-fetched" and he did not think that a jury would believe it.  According to trial counsel, the birthday cake incident "just seemed so minor and inconsequential" to escalate to a sexual assault accusation.  Trial counsel also testified that the jury heard about the birthday cake incident at trial anyway and there was no dispute from the State that the incident took place.

¶34 The circuit court found Woodley "generally credible and worthy of belief"; however, the court found Crockett's testimony "impossible to follow" and "useless." The circuit court further found that trial counsel made a reasonable, strategic decision not to present evidence of the argument between Conn and Julie. In addition, the circuit court did not find prejudice in regards to Crockett because she was "not a good witness."

¶35 We agree with the circuit court that trial counsel's decision not to present testimony in support of the birthday cake theory was a reasonable, strategic decision. Trial counsel testified in pertinent part that he believed the defense that Jenny fabricated the testimony because of the birthday cake incident was too "far-fetched," and he did not think that a jury would believe that such a "minor and inconsequential" incident would lead to a sexual-assault accusation. As the circuit court found, trial counsel's decision was reasonable, and we will not second guess trial counsel's reasonable strategy. *See State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93.

¶36 Thus, we conclude that trial counsel did not perform deficiently, and we reject Conn's claim that trial counsel was ineffective for failing to present additional witnesses in support of the birthday cake theory.

### IV. Plea Offer

¶37 Lastly, Conn argues that his trial attorney was ineffective for failing to convey the State's plea offer prior to trial. *See State v. Ludwig*, 124 Wis. 2d 600, 611, 369 N.W.2d 722 (1985) (stating that the failure to communicate a plea offer to a defendant constitutes deficient performance).

10

¶38    At the evidentiary hearing, trial counsel testified that he provided Conn with a copy of the discovery packet, which included the State's plea offer letter. According to the letter, if Conn entered a plea of guilty to a reduced charge of second-degree sexual assault, which did not carry the twenty-five-year mandatory minimum, the State would decline to pursue a second charge of sexual assault. As part of the offer, at sentencing, the State would recommend seven to eight years of initial confinement with the amount of extended supervision left to the circuit court.

¶39    Trial counsel recalled discussing the discovery with Conn, and the fact that if Conn proceeded to trial, he would be facing two counts of sexual assault. Trial counsel, however, did not specifically recall discussing the plea offer with Conn. According to trial counsel, Conn was "adamant" that he wanted a trial and did not indicate at any point that he wished to accept a plea deal. In fact, trial counsel recounted that when discussing the timeline of the trial, Conn responded "something along the lines of, good, I'll be home in time for the weekend."

¶40    Conn testified that he never received the State's letter with the plea offer, and trial counsel did not discuss the offer with him before trial. He also testified that he did not know about the mandatory minimum until sentencing. Conn testified that he would have accepted the State's plea offer prior to trial. Conn explained that because of his age, the twenty-five-year mandatory minimum was a life sentence.

¶41    The circuit court found that trial counsel was "generally … credible and worthy of belief." With respect to Conn's testimony, the circuit court found there were "moments in his testimony … that I think undermine his credibility

measurably." In particular, the court did not believe Conn's testimony that he was unaware of the mandatory minimum. The court noted that at the initial appearance Conn was given a copy of the complaint that identified there was a mandatory minimum and was told by the court commissioner that there was a mandatory minimum.

¶42 The circuit court found that trial counsel did not perform deficiently because trial counsel provided the plea offer letter to Conn when he gave him the discovery. The court also found that, even if trial counsel did not provide the plea offer, Conn was not prejudiced because he would not have accepted the offer. The court stated that it was:

> clear from [trial counsel's] testimony that from the very beginning [Conn] believed that first the DNA, then the recantation, would have him home by the weekend.
>
> There is nothing in those interactions that suggests that even if, in the face of a plea offer that would have sent him to prison that [Conn] would have accepted it.

¶43 Conn argues that an attorney is required to do more than "pass along" a letter with a plea offer. According to Conn, trial counsel needed to discuss the plea offer and its implications with him.

¶44 Even if we assume that trial counsel performed deficiently, we agree with the circuit court that Conn has failed to establish prejudice. To establish prejudice, Conn must show "a reasonable probability" that he would have accepted the plea offer. *See State v. Winters*, 2009 WI App 48, ¶36, 317 Wis. 2d 401, 766 N.W.2d 754. Here, there is not a reasonable probability that Conn would have accepted the plea offer. Trial counsel's testimony reflects that Conn was committed to going to trial based on his belief that the DNA evidence and Jenny's partial recantation would result in his acquittal. Nothing in the record establishes

that Conn would have accepted a plea offer. Thus, we conclude that the circuit court properly rejected Conn's claim that trial counsel was ineffective for failing to provide him with the plea offer.

## CONCLUSION

¶45 In sum, for all of the reasons above, we conclude that Conn was not deprived of effective assistance of counsel. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.