STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert H. WEISS, Jr.,Defendant-Appellant.

Court of Appeals

*No. 2007AP778–CR. Submitted on briefs January 17, 2008.
—Decided April 23, 2008.*

**2008 WI App 72**

(Also reported in 752 N.W.2d 372.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Glenn L. Cushing*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Juan B. Colas*, assistant attorney general.

Before Brown, C.J., Snyder and Neubauer, JJ.

¶ 1. BROWN, C.J. This is a case where it is claimed that the prosecutor struck a foul blow during closing arguments when she told the jury that the defendant, Robert H. Weiss, Jr., never denied committing the offense until he took the witness stand when, in fact, she had possession of two police reports showing that he did immediately deny it. *Berger v. United States*, 295 U.S. 78, 88 (1935), holds that, while the prosecutor may strike hard blows during closing arguments, the prosecutor's duty is to refrain from using improper methods. We hold that the prosecutor's argument stepped over the line and is not harmless. We reverse and remand with directions that Weiss be tried anew.

## BACKGROUND

¶ 2. Weiss was charged with two counts of sexual assault of a child under the age of sixteen, contrary to Wis. Stat. § 948.02(2) (2005–06),[1] one by reason of sexual intercourse and another as a result of sexual contact, and one count of second-degree sexual assault, contrary to Wis. Stat. § 940.225(2)(d). At a subsequent jury trial, Kasey D., fourteen years old at the time of the alleged offenses, testified that Weiss touched her breasts, then moved her to a sofa where he had mouth to vagina and penis to vagina contact with her without her consent. Kasey was a runaway from shelter care and was staying overnight at the home shared by Weiss's brother, Richard, and Weiss's son, with whom Kasey was friends, at the time of the incident. A DNA sample from Kasey's pubic hairs matched the male profile obtained from one of Weiss's standards, but was the result of a limited type of testing which does not identify a specific individual, only a pool of individuals —generally members of the same family. The DNA testing did not rule out other males.

¶ 3. Kasey's story was attacked by Weiss. The jury heard that, subsequent to the alleged assault, Kasey went to a park where she engaged in consensual sexual acts with another person, including putting her mouth on his penis and his penis in her vagina. She denied that he put his mouth or tongue on her vagina. The jury also heard that after being picked up by police, Kasey at first named Weiss's brother as her assaulter to a jail officer (though she identified him as her friend's father) and later told a police officer that she was "wasted." On the witness stand, Kasey admitted to a long history of lying, running away and stealing, admitted concocting a story

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

about having consensual sex with a nonexistent eighteen-year-old male, and also admitted having previously told an interviewer that she does not experience guilt and will do things to hurt people just for the fun of it. She also admitted that she did not tell the officer that Weiss had oral sex with her, nor did she say as much at the preliminary hearing.

¶ 4. Weiss testified in his own defense. He denied having any sexual contact with Kasey. On cross-examination, the prosecutor asked Weiss about the written statement he gave to the police. She asked why he would relate the events as they occurred on the date in question, but not include a denial of the crime as part of that written statement. Weiss replied that he denied the crime verbally to the interrogator but did not put the denial in writing because he was asked only to put down what happened and that is what he did.

¶ 5. During closing, the prosecutor argued as follows during her initial argument. We will emphasize those portions which we deem to be important to our holding in this case:

> *And more to the point, you heard for the first time in the course of this trial, the only denial on the Defendant's part of this crime.*

> *When Officer Obiden testified there was no evidence before you that the Defendant had denied engaging in these acts.* And, more to the point, the Defendant's own written statement, that which was going to be a permanent memorialization of the Defendant's side of the story, has absolutely no reference whatsoever to what it was that Officer Obiden was investigating. And what Officer Obiden was investigating was not secret to the Defendant. The very first page of the Defendant's statement where it goes through the Defendant's constitutional rights, says: That I, Officer Obiden, am investigating sexual assault of a child.

Now the Defendant testified today that he was so shocked at these allegations, common sense, Ladies and Gentlemen, would tell you that if you are being—not you, if one is being accused of in fact very serious crimes, and these are very serious crimes, that if you have the opportunity to address your position, especially in the form of something that was going to be part of your permanent record, you sure as heck would deny the central accusation. He doesn't do that. He doesn't do that.

Now he claims that he denied having done it to Officer Obiden, but again, Ladies and Gentlemen, and I don't mean to be slicing the baloney real thin here, *but again does that ring true to you that if you had denied it verbally that you would fail to mention anything at all about it in your written statement?* Your side of the story that was going to be part of an official police record? *He never said he didn't do it. Never said he didn't do it.*

*First time that we have heard a denial was when the defendant took the stand.*

¶ 6. When it was defense counsel's turn, he told the jury that Weiss had completely and unequivocally denied any involvement and maintained his innocence. He attacked the prosecutor for mischaracterizing his written statement and pointed out to the jury that Weiss was not asked to write down whether he did it; he was asked to write down what happened. Finally, defense counsel told the jury that the prosecutor "tries to say to you the first time we heard a denial from Mr. Weiss was in this courtroom today [and] that's simply not true. He has denied any involvement from day one, he's entered pleas of not guilty all along the way, he has maintained his innocence."

¶ 7. Undeterred, the prosecutor struck up the theme again in her rebuttal closing argument:

386

And you have to be asking yourself: Why, when one is being specifically accused of sexually assaulting a specific individual, why one would not take the opportunity in one's statement to the police to deny it. And, again, I'm asking you to draw on your own common experiences in life, your reaction to things. This Defendant was given the opportunity to memorialize his position on this issue. And [defense counsel] is correct, this Defendant has maintained at least from the outset of this case, this litigation, that he's innocent, by his not guilty pleas and such.

*But at the time if one were falsely accused of a serious crime, seems to me the first thing out of such a person's mouth would be: I did not do this. I'm not guilty. I never touched the girl. Had nothing to do with it.* But you won't see that in the Defendant's statement, and the suggestion that well, he was only asked to respond to what he was asked to respond to, is also disingenuous because the central allegation here is that this man, this adult, this father of a friend, had touched this 14–year old girl's breasts and had sexual intercourse with her. He didn't deny it. *Except today.*

¶ 8. Weiss was convicted of the count charging him with sexual intercourse and acquitted of the count alleging sexual contact. The charge of second-degree sexual assault had been dismissed during the trial.

¶ 9. Weiss's postconviction counsel argued that the closing argument was improper because it misled the jury into drawing an inference not supported by the record and which the prosecutor knew or should have known was untrue. First, there was no evidence introduced by the State to establish that before testifying at his trial, Weiss had *never* denied the allegations against him. In fact, he did verbally deny the allegations to Officer Obiden. Second, not only did Obiden never testify that Weiss had not denied the allegation of

sexual assault, counsel was able to secure a police report establishing that Weiss denied the allegations to Obiden when first questioned three days after the alleged incident. The written police report indicates that, after Weiss was advised of and waived his *Miranda*[2] rights, he said that "he did not at any time have any sexual contact" with Kasey. Moreover, a subsequent police report explains that, immediately after his arrest some nine days later, Weiss again told police that he did not have sex with Kasey.[3] Postconviction counsel argued that when the prosecutor said to the jury, "He never said he didn't do it" and that "He didn't deny it. Except today," the statements were false and misleading and the prosecutor knew it or should have known it. The motion was denied and we now have this appeal.

## DISCUSSION

¶ 10. We cited *Berger* at the outset of our opinion. We will now quote the rather famous lines in that opinion. The United States Supreme Court wrote that the prosecutor

> may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Both reports are contained in the appellate record, having been appended to the postconviction motion. At the postconviction hearing, Weiss and the State stipulated that the officers who authored the reports, if called as witnesses, would have testified that the reports accurately described Weiss's statements.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none . . . .

In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence.

*Berger*, 295 U.S. at 88–89.

¶ 11. Weiss cites two cases to support his position that when a prosecutor's closing argument asks the jury to draw inferences that the prosecutor knows or should know are not true, it is improper argument requiring reversal. The first case is *United States v. Toney*, 599 F.2d 787 (6th Cir. 1979). Toney was charged with being one of three masked men who robbed a savings and loan. *Id.* at 788. A large sum was taken, including so-called "bait money" or marked money. *Id.* The most important pieces of evidence for the government were a nylon stocking with holes cut in it and one $20 bill and one $50 bill of bait money, all uncovered during a search of Toney's residence. *Id.* Toney's defense was that he had planned on participating in the robbery, but got cold feet and a man named Jimmie King took his place. *Id.* He claimed that he won the incriminating bait bills and other money found at the residence while gambling with friends on the day of the robbery and the next day. *Id.* He said that one of the gamblers was King who had brought with him large sums of cash. *Id.* The government blunted Toney's defense by presenting two witnesses who said that Toney had lost big during the gambling and King was not gambling—rather, he par-

ticipated only as a "stickman"—one who held the cash. *Id.* at 788–89. King, for his part, was subpoenaed to testify, but successfully invoked the Fifth Amendment. *Id.* at 789–90. At closing, the prosecutor argued that since no witness verified Toney's story that King was gambling those two days, Toney's defense was incredible. *Id.* at 790. What the prosecutor did not tell the jury was that he had in his possession a written statement from King corroborating Toney and admitting that he had been gambling with large sums after the robbery. *Id.* at 789. The Sixth Circuit wrote:

> In the circumstances, we find this line of argument to be foul play. As he was making the argument, the prosecutor well knew that evidence did exist to corroborate Toney's story in this regard and that it had come from King himself. Moreover, the nature of the closing argument forecloses any possible claim that the exclusion of the King statement could have been harmless error. The prosecutor told the jury that it should convict because of the absence of evidence which he knew existed. We have no choice but to assume that the jury was persuaded by the prosecutor's remarks and convicted for that reason.

*Id.* at 790–91.

¶ 12. The second case cited by Weiss is *People v. Kirby*, 144 N.W.2d 651 (Mich. Ct. App. 1966). There, Kirby's defense to selling narcotics during a transaction in Grand Rapids was alibi. *Id.* at 652. Pursuant to the duties imposed upon the prosecution in the case of indigent defendants in Michigan, it was the prosecutor who had the responsibility to subpoena the alibi witness. *Id.* But no alibi witness testified. *See id.* Kirby maintained that, at the time of the sale, around 1:00 p.m., he was in Lansing with Marques Haynes. *Id.* The prosecutor denigrated the story and told the jury:

> Where is Marques Haynes? Well, the address they gave to us to check for his alibi, they do not know any Marques Haynes there . . . . We couldn't find any Marques Haynes. Nobody even knows this guy . . . whoever he is. What do the People say? The People say, "We don't believe Tommie Kirby was ever in Lansing."

*Id.*

¶ 13. After the verdict, the defense counsel received information that, the day before trial, the prosecutor learned that Grand Rapids police had contacted a Marcus Taylor near the address provided by Kirby, that Taylor told how Kirby was in Lansing with him on the day in question and that Taylor had given Kirby $2.12 for the purpose of taking the bus from Lansing to Grand Rapids at 11 a.m. *Id.* at 652–53. The court wrote:

> In the instant case if the alibi witness had testified in court along the lines set forth in the deposition of the assistant prosecutor, it is difficult to say that such testimony would have assisted the defendant in his defense because of the time element involved, but the assistant prosecutor with full knowledge that the defendant had been in Lansing on the date in question improperly and prejudicially argues to the jury: 'We don't believe Tommie Kirby was ever in Lansing.' This is not only an expression of opinion, it is contrary to the information the prosecutor had before the trial commenced.

*Id.* at 653. The court, citing *Berger*, reversed. *Kirby*, 144 N.W.2d at 653.

██

¶ 14. The question for us to determine is whether the facts here are in line with what occurred in the *Toney* and *Kirby* cases. The State argues that they are not. The State posits that all the prosecutor was doing

in this case was asking jurors to consider why Weiss, if he was so innocent of the charges, would not memorialize his denial in writing. In the State's view, that is a fair question to ask.

¶ 15. But, as the State concedes, the prosecutor went beyond parsing the language of Weiss's statement. The prosecutor's main premise was that if Weiss was truthful in saying that he verbally denied to the officer that he sexually assaulted Kasey, he would have memorialized it in his written statement. The prosecutor said to the jury,

> Now, he claims that he denied having done it to Officer Obiden, but again Ladies and Gentlemen, and I don't mean to be slicing the baloney real thin here, but again does that ring true to you if you had denied it verbally that you would fail to mention anything at all about it in your written statement? ·

From this rhetorical question by the prosecutor, we are more than convinced that she was asking the jury to disbelieve Weiss's statement that he had verbally denied the crime to the police. In fact, her complete argument on the subject was that, other than a formal plea of not guilty, Weiss had *never* denied the crime until he got on the witness stand. She knew better. She had the two police reports saying otherwise. We hold that the facts here comport with the situations in *Toney* and *Kirby*. We point out once more, because this is important: the State concedes that the prosecutor's argument, asserting that Weiss never denied the crime, implicitly including verbal denials, was incorrect. The importance of what we are about to say cannot be underscored enough. Prosecutors may not ask jurors to draw inferences that they know or should know are not true. That is what occurred here and it is improper.

¶ 16. The remaining question is whether the prosecutor's improper argument warrants a reversal here. Weiss has brought this appeal as a claim in the interest of justice, and argues that though his trial counsel did not object to the argument, we should nevertheless reverse. *See State v. Neuser*, 191 Wis. 2d 131, 140, 528 N.W.2d 49 (Ct. App. 1995) (we have discretion to reverse on a waived error if the real controversy has not been fully tried). Weiss submits that the prosecutor's misconduct here prevented the real issue from being fully tried. The State, for its part, emphasizes Weiss's failure to object to the closing argument and argues that we must view the improper argument in the context of the entire trial. *See id.*, 191 Wis. 2d at 136. As for Weiss's failure to object, we note that neither of the reports that belie the prosecutor's false factual claims were entered into evidence or were made an issue at trial. The prosecutor's misstatements came in the closing argument and thus Weiss did not have an opportunity to introduce the contrary reports during the evidentiary portion of the proceedings. Additionally, the falsehoods likely came as a surprise to Weiss's counsel since the State had acknowledged during pretrial proceedings that they would likely not be seeking to introduce Weiss's written statement because he had "obviously denied" committing the assault. And in any case, as Weiss points out, we can consider unpreserved errors in exercising our discretion to reverse in the interest of justice.

¶ 17. We have also viewed the prosecutor's false statements in light of the entire proceeding, as the State correctly urges us to, but we agree with Weiss that from this point of view as well, reversal is necessary. As Weiss points out, though there was some inconclusive

393

DNA evidence, the case largely boiled down to a credibility battle between Weiss and Kasey. The prosecutor's closing was designed to undermine Weiss's credibility and to rehabilitate Kasey's. She needed to do this because Kasey's credibility, putting it charitably, was not pristine. In working to discredit Weiss, the prosecutor struck a foul blow. The system of justice will be better off if Weiss is tried anew so that a new jury can assess credibility in a more candid light.

*By the Court.*—Judgment and order reversed and cause remanded with directions.