COURT OF APPEALS
DECISION
DATED AND FILED

November 3, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP759-CR**

Cir. Ct. No. **2013CF83**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

QUENTIN L. ROGERS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Fond du Lac County: ROBERT J. WIRTZ, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Reilly, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Quentin L. Rogers appeals from a judgment convicting him after a jury found him guilty of three counts of retail theft as a repeater. He also appeals from an order denying his motion for postconviction relief in which he alleged *Brady*/discovery violations, prosecutorial misconduct, ineffective assistance of trial counsel, and additionally sought postconviction testing of physical evidence for fingerprints and DNA.[1] We affirm.

## *Background*

¶2 The State charged Rogers with the following three counts of retail theft stemming from incidents that took place at a Walmart: count one, taking a computer valued under $500 on February 11, 2013; count two, taking a computer valued over $500 but less than $5,000 on February 12, 2013; and count three, intentionally removing an anti-theft device with the intent to steal another computer, also on February 12, 2013. At trial, Rogers' defense was one of misidentification regarding the first two counts. He argued he was not the suspect observed on surveillance videos from the first two incidents or the suspect who sold the stolen computers. As to count three, Rogers' defense was that although he was the person on the surveillance video, he did not take anything.

¶3 The State's evidence against Rogers fell into four main categories: (1) testimony by Walmart employee Lucas Viner who personally observed and followed Rogers during the incident that formed the basis for count three; (2) surveillance videos from the store and testimony by Walmart loss prevention associate Lisa Clark describing the videos; (3) testimony by Darryn Shipton and

---

[1] *See **Brady v. Maryland**, 373 U.S. 83 (1963).

2

Erick Johnston claiming Rogers sold them computers, one of which was later determined to be stolen from Walmart; and (4) testimony from Detective Patrick Primising related to clothing that was located at the residence of Rogers' then-girlfriend, Vicki Brown, which the State argued were worn by the suspect in the surveillance videos.

¶4   The jury found Rogers guilty of the three counts, and he sought postconviction relief. Following an evidentiary hearing where both Rogers and his trial counsel testified, the circuit court denied the motion.

¶5   We will present additional background information pertinent to each of the issues Rogers pursues on appeal in the discussion that follows.

## *Discussion*

### (1) Alleged *Brady*/discovery violations by the State

¶6   Rogers first asserts that the State violated its obligations under *Brady* and WIS. STAT. § 971.23(1) (2019-20) by failing to disclose Shipton's deferred agreement and what Rogers contends was an improper single-photo identification procedure.[2]  Under *Brady*, the State must turn over to a defendant evidence that is material to either guilt or punishment. *State v. Harris*, 2004 WI 64, ¶12, 272 Wis. 2d 80, 680 N.W.2d 737. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a

---

[2] WISCONSIN STAT. § 971.23(1) specifies what a prosecutor must disclose to a defendant as it relates to discovery and inspection. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted. Although Rogers' trial took place in 2014, the current version of § 971.23(1) remains the same in all relevant respects.

probability sufficient to undermine confidence in the outcome." *Id.*, ¶14 (citation omitted). Whether a discovery violation has occurred because the State failed to disclose required information under § 971.23(1) is a question of law we review without deference to the circuit court. *See State v. Rice*, 2008 WI App 10, ¶14, 307 Wis. 2d 335, 743 N.W.2d 517 (2007).

a. Shipton's deferred agreement status at the time of the investigation.

¶7      Shipton, as noted above, was one of the State's witnesses claiming that Rogers sold him a computer. The State informed the defense that it intended to present testimony from Shipton during its case-in-chief and advised that Shipton had one criminal conviction. However, just before Shipton testified, the State sought confirmation that it had correctly specified that Shipton had only one criminal conviction, explaining that it had learned that Shipton had a deferred prosecution agreement in addition to the one previously disclosed conviction. The court told the State that a deferred prosecution agreement was not a conviction, making the State's earlier assertion that Shipton had one criminal conviction accurate.[3] Rogers did not disagree.

¶8      Shipton went on to testify that he previously had been convicted of one crime. He further testified that on February 12, 2013, Rogers arrived at Shipton's body shop in a blue car. Shipton said that Rogers offered to sell him a computer with a Walmart tag on it, which Shipton purchased for $275.

---

[3] At trial, the State said Shipton was subject to a deferred prosecution agreement. In his postconviction motion, Rogers claimed Shipton was subject to a deferred judgment agreement and provided supporting documentation to this effect. On appeal, Rogers, at times, more generally contends that Shipton was subject to a deferred agreement. We will do the same because the precise nature of the agreement does not impact our analysis.

¶9 Rogers argues the State violated **Brady** by failing to disclose Shipton's deferred agreement, which gave Shipton a motive to lie to police about how he received the stolen computer; namely, to avoid revocation of the deferred agreement. Assuming without deciding that the State erred when it failed to disclose Shipton's deferred agreement before trial, Rogers has not shown that there is a reasonable probability that even if the jury had learned that Shipton had been convicted not once, but twice, the result of the trial would have been different. As a result, he has not shown that the deferred agreement was material evidence. *See **Harris***, 272 Wis. 2d 80, ¶¶14-15

¶10 The closest Rogers comes to making this showing is by speculating that the deferred agreement motivated Shipton to lie about how he ended up with the stolen computer. However, there is nothing in the record to suggest that Shipton was involved in the underlying crimes so as to compel him to lie to shift suspicion and avoid being implicated. Rogers' conclusory allegations are insufficient to support his claim of a **Brady** violation

¶11 Rogers additionally contends that WIS. STAT. § 971.23(1)(f), which requires disclosure of the criminal record of witnesses on the State's witness list, extends to deferred charges. As support, he relies on ***State v. White***, 2004 WI App 78, ¶25, 271 Wis. 2d 742, 680 N.W.2d 362, where we held that "[a] witness's probationary status is relevant [and should be disclosed] because it and the fear of possible revocation are pertinent to the material issue of whether the witness has 'ulterior motives' to shape his or her testimony." Rogers acknowledges that Shipton was not on deferred status at the time of trial, but suggests that ***White*** applies because Shipton was on deferred status when the incident was investigated. We are not persuaded that we should adopt Rogers' broad reading of ***White*** so as to apply it to the circumstances presented.

b. Single-photo identification.

¶12 We turn to Rogers' claim that the use of a single photo, which was not disclosed to the defense before trial, effectively constituted an improper showup. Rogers submits that the State's failure to disclose the improper identification procedure that was used amounted to the suppression of evidence that was favorable to him in violation of *Brady* and WIS. STAT. § 971.23(1).

¶13 During cross-examination, Shipton testified that he was shown a picture lineup. Outside the presence of the jury, trial counsel objected that the State had not provided information about a lineup. Detective Primising subsequently explained that he asked Shipton to identify Rogers by showing him a single Department of Corrections ("DOC") photo of Rogers. Trial counsel made no further objection. Consequently, we agree with the State that Rogers forfeited his argument that the State violated *Brady* and WIS. STAT. § 971.23(1) for not disclosing the single-photo identification procedure.[4] *See State v. Delgado*, 2002 WI App 38, ¶12, 250 Wis. 2d 689, 641 N.W.2d 490 (holding that under the forfeiture rule, a specific, contemporaneous objection is required to preserve a claim of error for appeal).

**(2) Prosecutorial Misconduct**

¶14 Rogers next asserts that the prosecutor committed misconduct by knowingly asking the jury to draw a false inference, which warrants reversal based either on plain error or in the interest of justice. During rebuttal, the prosecutor

---

[4] We will, however, address the merits of this issue later in this decision within the rubric of ineffective assistance of counsel.

6

argued that he did not know how long Rogers was in jail following his February 12, 2013 arrest and suggested that Rogers may have been released from custody before the suspect sold the computer to Johnston on February 13, 2013. Rogers argues that this was false and the prosecutor knew or should have known that this was false. He submits that he remained in jail for months on a probation hold while he awaited his revocation proceedings.

¶15    Rogers acknowledges that the lack of a contemporaneous objection precludes direct review, but asserts that the misconduct is subject to review as plain error. The plain error doctrine permits appellate courts to review "fundamental" errors that are otherwise forfeited by the failure to object in the circuit court. *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. Appellate courts will deem an error to be plain only "sparingly" and "[t]o qualify … the error must be obvious and substantial[,] and so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." *State v. Bell*, 2018 WI 28, ¶12, 380 Wis. 2d 616, 909 N.W.2d 750 (internal quotation marks omitted; second set of brackets in *Bell*). Rogers additionally contends that prosecutorial misconduct can be grounds for reversal in the interest of justice when the real controversy was not fully tried, regardless of the lack of contemporaneous objection. *See State v. Weiss*, 2008 WI App 72, ¶17, 312 Wis. 2d 382, 752 N.W.2d 372.

¶16    Prosecutorial misconduct violates due process if it "poisons the entire atmosphere of the trial[.]" *State v. Lettice*, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996) (citation omitted). Reversal on this basis is drastic and should be approached with caution. *Id.* It is the defendant's burden to establish that it occurred. *State v. Harrell*, 85 Wis. 2d 331, 337, 270 N.W.2d 428 (Ct. App. 1978).

7

¶17    During closing arguments, trial counsel argued that if the thief sold Shipton a computer on February 12, 2013, and sold Johnston a computer the next day, i.e., February 13, 2013, then Rogers could not be the thief because he was arrested and jailed the night of February 12.  During rebuttal, the prosecutor asserted:

> There was testimony—or not testimony, but there was argument that there's no way that these computers that Mr. Shipton had and that … Erick [Johnston]…, that they bought them from Mr. Rogers.  Well, if you look back in your notes, if any of you took as copious notes as I hope you did, the first computer was bought on February 12th.  That would be, presumably, between the first two instances and the third instance.  And then, as far as time[ ]wise, time line goes, we don't know exactly when the second computer was sold to [Johnston].  We also don't know how long Mr. Rogers was in jail.  He's not in jail now.  So, we don't know when he got released from jail.  Just because he was arrested that night doesn't mean that he has lived there in perpetuity until we're here today.  Clearly, that's not the case.  So, I think that's kind of a red herring for you to try and say oh, well, he couldn't have done it.  He got arrested.  Well, not everyone gets arrested and is kept.  I mean, this wasn't a homicide.  This isn't a case where he's—that he's been in solitary confinement.

Rogers contends that he was not released from custody on February 13, 2013, which the prosecutor should have known.

¶18    We agree with the State that Rogers' argument is based on the hazy nature of the timeline in the case.[5]  *See* ***State v. Bvocik***, 2010 WI App 49, ¶13, 324

---

[5] During her testimony at the ***Machner*** hearing, trial counsel testified about the confusion surrounding the timing of the events and her efforts to use that confusion to Rogers' advantage by arguing that he was in custody at the time Johnston purchased his computer.  *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).  For instance, trial counsel pointed out that when Shipton and Johnston referred to Johnston buying his computer "the next day," the inference was that they meant February 13, 2013, which was helpful to the defense, even though trial counsel believed the sale to Johnston actually took place later in the day on February 12, 2013.

(continued)

Wis. 2d 352, 781 N.W.2d 719 (explaining that we consider the entire record to determine whether prosecutorial misconduct affected the fairness of the trial). Viner testified that he witnessed Rogers stealing a computer the night of February 10, 2013. He additionally testified that he thwarted Rogers' next attempt the following night and called the police. Police officers, however, testified that they were dispatched to Walmart on February 12, 2013—not February 11, 2013—to arrest Rogers.

¶19 Meanwhile, Shipton testified he bought the computer from Rogers on February 12, 2013. Johnston testified that he could not remember the exact date when he bought his computer from Rogers. However, he testified that after Rogers sold a computer to Shipton, he bought one the next day. Detective Primising testified he met with Rogers in jail on February 13, 2013.

¶20 As highlighted by the State, the evidence did not clearly establish when Johnston bought the computer nor did it show how long Rogers spent in jail. There were various windows of opportunity when Johnston could have made the purchase. Moreover, there was no reason for the State to know in advance that Rogers was going to argue in his closing argument that he could not have been the thief based on Johnston's "next day" testimony. The State would have had no reason to anticipate that the duration of Rogers' time in jail would have been relevant. Having reviewed the record, we are not convinced that the prosecutor's

---

Indeed, a police report, dated shortly after the incidents, which was accepted as an exhibit during the *Machner* hearing indicates that Shipton told police that Johnston purchased a computer later *during the same day as Shipton* on February 12, 2013. A separate written statement from Johnston that was also accepted as an exhibit at the *Machner* hearing, dated shortly after the incident also indicates Johnston purchased a computer "a couple hours" after Shipton. Rogers was not arrested until approximately 11:00 p.m. on February 12.

actions constitute misconduct, let alone plain error. As such, there is no reason for a new trial in the interest of justice.

### (3) Ineffective Assistance of Trial Counsel

¶21    Rogers claims his trial counsel was ineffective for failing to present testimony from Rogers' probation officer, Raven Berry, and for failing to object to the previously mentioned errors along with what he contends was improper testimony from Viner and Detective Primising. To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (citations and one set of quotation marks omitted). A reviewing court need not address both prongs of the analysis if the defendant makes an insufficient showing on either one. *Strickland*, 466 U.S. at 697.

a. Failure to call Raven Berry as a witness.

¶22    Rogers argues that trial counsel was ineffective for failing to present testimony from his probation agent, Raven Berry, who was unable to identify Rogers in some of the surveillance videos. Rogers wanted Berry to be called as a witness and informed trial counsel of this. Given that his defense was

10

misidentification, Rogers contends that the failure to present this testimony was objectively unreasonable and deficient.

¶23    At the *Machner* hearing, Rogers' trial counsel explained that although Berry was unable to identify Rogers in two videos, she did identify him in the third. Trial counsel testified that she considered calling Berry as a witness but ultimately chose not to for the following reasons:

> Because she [i.e., Berry] could identify him on the third tape, which only went to exacerbate the fact that he was there, pushing a cart, putting a computer in it, taking a computer out. Mr. Rogers had a very distinctive walk, gait. If I recall—I didn't rewatch the videos, but I think in all three videos he was holding onto his phone and he held the phone the same way, he walked the same way. It was very distinctive.
>
> I felt, if I put her on the stand, it would only, like I said, exacerbate that was him in that video … and if we would have had another person to confirm that that was him in that third video, that that was very likely the person in the second and the first video. So, I didn't want to call another person to point out the fact that it was very clearly Mr. Rogers in that third video.

Trial counsel made a reasonable strategic decision not to call Berry as a witness and, therefore, did not perform deficiently. *See State v. Elm*, 201 Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996) (explaining that "[a] strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel").

¶24    Berry did not say that the man in the two videos was not Rogers, only that she could not testify that it was him. Our confidence in the reliability of the proceedings is not undermined by the failure to present Berry's inconclusive testimony on this point. *See Love*, 284 Wis. 2d 111, ¶30 (explaining that when

11

analyzing prejudice, "[t]he focus of the inquiry is not on the outcome of the trial, but on the reliability of the proceedings" (internal quotation marks omitted)).

b. Failure to object to Viner's testimony.

¶25     Rogers contends that trial counsel failed to object to hearsay and confrontation violations by Viner.  Viner, a Walmart employee, testified that during his shift he witnessed a man with a computer in his cart, and that later, an employee brought Viner a security device that had been removed from a computer.  The prosecutor then asked Viner whether he had heard anything else about the security device, to which Viner responded:

> The next evening when I reported to work at 7:00, I was informed that my suspicion was correct, that the gentleman who I saw with the computer in his cart is, in fact, the person who removed the security device from that computer and took it and, in fact, he was in the night previous to that as well.

¶26     The extent of Rogers' showing as to prejudice is his contention that "[t]he testimony was prejudicial because it involved an unknown [third] party opining on the ultimate question for the jury to answer" without allowing the defense an opportunity to confront the hearsay declarant and question the basis for this opinion or whether it was actually given.  This conclusory assessment of the significance of the unobjected-to testimony is inadequate to show prejudice.  *See Love*, 284 Wis. 2d 111, ¶30; *see also **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (undeveloped legal arguments).

c. Failure to object to Detective Primising's testimony.

¶27     According to Rogers, trial counsel should have objected to Detective Primising's testimony about Brown, Rogers' then-girlfriend, and the

items of clothing seized from her apartment. Rogers contends Detective Primising's testimony was "an egregious example of narrative testimony" that included hearsay and improper lay opinion. Detective Primising testified:

> [Brown] indicated that she was not aware of Quentin stealing anything. He did have some belongings at the residence. She was the person that paid the rent and he had been staying there for approximately a week. We asked her if she could show us where his clothing was. She said she certainly would. Took us into a bedroom which appeared to be her bedroom. She pulled some shoes out from under her bed and there were several jackets that she said were his behind the door to the bedroom.

Detective Primising additionally testified that various items of clothing retrieved from Brown's home matched the clothing the man in the surveillance videos was wearing.

¶28 Rogers fails to develop an argument as to prejudice related to the form of Detective Primising's testimony. As for trial counsel's lack of an objection to Detective Primising's testimony regarding what Brown told him, Rogers simply states, without further development, that the lack of an objection allowed the State to pre-emptively discredit Brown's testimony that was helpful to Rogers. Again, Rogers' conclusory assessment of the significance of the unobjected-to testimony is inadequate to show prejudice. *See id.*; *see also* **Pettit**, 171 Wis. 2d at 646-47.

¶29 Additionally, any objection to the manner of Detective Primising's testimony—such as his statement that Rogers wore "the PellePelle jacket" during "the second incident"—would have only prompted Detective Primising to rephrase his answer, which does not result in reasonable probability that the

outcome of Rogers' trial would have been different. *See Love*, 284 Wis. 2d 111, ¶30.

d. Failure to object to tainted in-court identification.

¶30 We return to Rogers' claim that the use of a single photo, which was not disclosed to the defense before trial, effectively constituted an improper showup, which tainted Shipton's in-court identification. Rogers contends that trial counsel was ineffective for forfeiting an objection on this basis.

¶31 When reviewing challenged identification procedures, the reliability of the identification is the "linchpin" for determining admissibility. *See State v. Roberson*, 2019 WI 102, ¶3, 389 Wis. 2d 190, 935 N.W.2d 813 (citations omitted). "Due process requires that evidence infected by improper police conduct from which there is a substantial likelihood of misidentification will be excluded unless the State proves that under the totality of circumstances bearing on the identification, it is nonetheless reliable." *See id.*, ¶44.

¶32 Even if Rogers met his burden of proving an impermissibly suggestive mode of identification, we conclude that under the totality of the circumstances, the identification was reliable. Shipton testified that he first met Rogers when Rogers came to his body shop in February 2013. Shipton spoke to Rogers for about twenty minutes before buying the computer from him. In total, Shipton spoke to Rogers for about forty-five minutes. Johnston, Shipton's employee, bought a computer from Rogers shortly after Shipton and police found a text message from February 13, 2013, from Johnston to Rogers in Rogers' phone. This message bolsters the reliability of Shipton's identification of Rogers as the person who sold him the computer.

¶33   "Due process does not require the suppression of evidence with sufficient 'indicia of reliability.'" *Id.*, ¶3 (citation omitted).  Given that the circuit court would have admitted Shipton's identification over any objection by trial counsel, our confidence in the reliability of the proceedings is not undermined by trial counsel's failure to so object.  *See Love*, 284 Wis. 2d 111, ¶30.

e.   Failure to present jail records

¶34   Next, Rogers contends that trial counsel was ineffective for forfeiting an objection to the prosecutor's false closing arguments and for failing to have jail records to show that Rogers was in custody, which would have supported counsel's argument.  At the *Machner* hearing, trial counsel offered her reasons for not objecting, which included not wanting to draw attention to the prosecutor's argument and her desire to have the jury follow the instructions it was given and focus on the exculpatory evidence that had been presented, not the arguments of counsel.

¶35   Rogers' disagreement with trial counsel's strategy in this regard is insufficient to establish that counsel's performance fell below an objective standard of reasonableness.  *See Love*, 284 Wis. 2d 111, ¶30.  Moreover, when it addressed this issue, the circuit court explained that "the idea that the [c]ourt would have sustained an objection, reopened the testimony, had parties go into an explanation about what the jail records showed … I think, is far-fetched."  Our

confidence in the reliability of the proceedings is not undermined by trial counsel's failure to object and attempt to introduce jail records.[6] *See id.*

### (4) Testing of Evidence

¶36     Lastly, Rogers argues that the circuit court erroneously exercised its discretion when it denied testing of the physical evidence, specifically, anti-theft security devices, computers, and computer boxes, for fingerprints and DNA. At the outset we note that neither *State v. Lee*, 192 Wis. 2d 260, 531 N.W.2d 351 (Ct. App. 1995), *vacated in part by* 197 Wis. 2d 959, 542 N.W.2d 143 (1996), nor WIS. STAT. § 165.79(1), the authority on which Rogers relies to justify his request for postconviction fingerprint testing, clearly supports his position. Rogers asserts that "*Lee* is no longer of precedential value," but nevertheless contends that we should apply its rationale here because "no other published case has established an alternative standard." We decline this invitation. Further, Rogers has failed to develop a convincing argument that WIS. STAT. §  165.79(1) even applies to a request for the postconviction testing he seeks let alone that the factors articulated in *Lee*—where the request for testing took place pretrial—are applicable here.[7]

---

[6] Rogers argues that the prejudice from trial counsel's alleged errors "is largely from their aggregate effect[.]" Whether viewed separately or together, the omissions complained of do not undermine our confidence in the reliability of the proceedings. "Zero plus zero equals zero." *Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).

[7] WISCONSIN STAT. § 165.79 reads in relevant part:

(continued)

¶37     The applicable statute with regard to postconviction DNA testing is WIS. STAT. § 974.07.  A court may grant such a motion only if the defendant satisfies a strict set of statutory criteria set forth in § 974.07(7)(a) or (b).  *See **State v. Denny***, 2017 WI 17, ¶71, 373 Wis. 2d 390, 891 N.W.2d 144.

¶38     Here, the circuit court explained that it was "not convinced that DNA is going to help solve anything in this case."  Rogers did not establish the applicability of WIS. STAT. § 974.07(7)(a) or (b) criteria.  In particular, even if there was evidence of a third party's DNA profile or an absence of Rogers' DNA, those results would not create a reasonable probability either that Rogers would not have been prosecuted or convicted, *see* § 974.07(7)(a)2., or that the outcome of the proceedings would have been a more favorable outcome for him, *see* § 974.07(7)(b)1., given the other evidence that incriminated him.  We additionally note in passing that it is not even clear that the State possesses the evidence

---

**Evidence privileged. (1)** Evidence, information and analyses of evidence obtained from law enforcement officers by the laboratories is privileged and not available to persons other than law enforcement officers nor is the defendant entitled to an inspection of information and evidence submitted to the laboratories by the state or of a laboratory's findings, or to examine laboratory personnel as witnesses concerning the same, prior to trial, except to the extent that the same is used by the state at a preliminary hearing and except as provided in [WIS. STAT. §] 971.23.  *Upon request of a defendant in a felony action, approved by the presiding judge, the laboratories shall conduct analyses of evidence on behalf of the defendant*.

(Emphasis added.)  Rogers relies on the italicized language, asserting that there is nothing that precludes it from applying in the postconviction setting.  We note that he does not direct us to any case law that supports his position.

Rogers seeks to test, which is a statutory prerequisite.[8]  *See* § 974.07(2) ("[A]fter being convicted of a crime …, a person may make a motion in the court … for an order requiring forensic [DNA] testing of evidence to which all of the following apply: …  The evidence is in the actual or constructive possession of a government agency.").

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8]  Insofar as Rogers challenges the State for making this new argument on appeal, there is a distinction between an appellant's duty to raise all objections at the circuit court level and the respondent's freedom to raise new arguments for the first time on appeal. *See, e.g.*, **State v. Holt**, 128 Wis. 2d 110, 125, 382 N.W.2d 679 (Ct. App. 1985*), superseded by statute on other grounds*.