COURT OF APPEALS
DECISION
DATED AND FILED

March 12, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1328-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF242

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

BYRON EMMETT HALL,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Byron Emmett Hall appeals from a judgment convicting him, following a jury trial, of second-degree sexual assault of a child.

He also appeals an order denying his motion for postconviction relief. Hall argues that he is entitled to a new trial due to several purported errors by both the circuit court and his trial counsel. Alternatively, he asks this court to apply the plain error doctrine to "extrinsic evidence [used] to discredit" him at trial and the State's "misleading" closing argument, or to order a new trial in the interest of justice. For the reasons that follow, we affirm Hall's judgment of conviction and the court's order denying his postconviction motion.

## BACKGROUND

¶2      On May 15, 2017, Gianna,[1] the daughter of Hall's girlfriend, informed law enforcement that Hall had sexually assaulted her the night before. At the time of the allegation, Gianna was thirteen years old. Hall was arrested and charged with second-degree sexual assault of a child.

¶3      The case proceeded to a jury trial at which Gianna testified to the following. Gianna's mother, Clara, owned a home where she, Gianna, and Hall lived at the time of the allegation. On May 14, 2017—Mother's Day—Hall and Gianna were sitting at the home talking. During their conversation, Hall instructed Gianna to turn around so that he could "massage [her] shoulders." Hall then grabbed a blanket and instructed Gianna to "lay down on the ground." Gianna testified that Hall continued to massage her shoulders while she was lying down on her stomach. Eventually, Hall told Gianna to lie on her back, and he "put his

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use pseudonyms for the victim, her mother, and the victim's friend.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

finger in [her] vagina." Hall then "took out his penis and grabbed" Gianna's hand and "then made [her] touch" his penis.

¶4 After the jury found Hall guilty of the charge alleged, Hall filed a motion for postconviction relief, which the circuit court denied following an evidentiary hearing. Hall now appeals. Additional facts will be included below as necessary.

## DISCUSSION

### I. The circuit court's decisions to exclude certain text messages and to not adjourn the trial

#### A. Text messages

¶5 Hall first argues that the circuit court applied the wrong legal standard under WIS. STAT. § 972.11 in its pretrial decision to exclude text messages relating to Gianna and an "older girl." Hall further argues that the exclusion of the text messages deprived him of his constitutional right to present a defense because the text messages demonstrated Gianna's motive for fabricating the sexual assault.

¶6 In a pretrial motion titled "Motion to admit other acts," Hall sought an order allowing him to admit at trial various "[t]ext messages and notes." Hall did not include the language of the text messages and notes, but instead he described them as follows:

> Text messages and notes of [Gianna] show a young woman engaged in a relationship with an older girl and frustrated that she cannot be with her or keep talking to her over messaging.
>
> Text messages and notes of Gianna show a young woman enraged at her parents and in on[e] such message she says,

among other things, to her mother "One day Byron and I are gonna be gone and you'lle [sic] be alone. Lets [sic] see how you fuckin like it. Bitch." To her father "Hope you rot in hell. God can't save you at this point." To Mr. Hall she initially writes nice things to him but then ultimately says SCRATCH ALL THAT FUCK YOU TOO.

On the same day as [Gianna] alleges the incident happened she messages her friend about how her mom and dad told her she might have to go to a different school and get rid of all her friends.

¶7    At the motion hearing, Hall also did not submit the text messages and notes into the record. Instead, he described the text messages, stating:

[W]e have phone text messages where [Gianna] is complaining about her mother, about Mr. Hall, about how they are restricting her phone use, how they are not letting her be around her friends, how she's miserable.

….

In some of the text messages, she also speaks to how unhappy she is about her—the restrictions put on her cell phone, that all she wants to do is be with her friend … and Mr. Hall and her mother are standing in her way.

….

[T]he text messages have a lot of information in them. It's not simply about the relationship between the complainant and this other girl.

Hall argued that the text messages would help support his defense that Gianna "fabricated" the allegations against him "because she was angry about the situation she found herself in."

¶8    In an oral ruling, the circuit court denied Hall's motion to admit the text messages related to the older girl, concluding that the messages would be inadmissible unless Hall established an exception to the rape shield law under WIS. STAT. § 972.11(2)(b). Nonetheless, the court offered to review the text

4

messages before trial if the defense submitted them.[2]  Hall never submitted the text messages.

¶9     We "will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion."  *State v. Jackson*, 2014 WI 4, ¶43, 352 Wis. 2d 249, 841 N.W.2d 791 (citation omitted).  However, Hall's failure to offer, or to adequately describe the contents of, the text messages to the circuit court equates to a failure to preserve the issue for appeal.[3]  "Error may not be predicated upon a ruling which … excludes evidence unless a substantial right of the party is affected" and "the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked."  WIS. STAT. § 901.03(1)(b).  "Two purposes are served by an offer of proof: first, provide the circuit court a more adequate basis for an evidentiary ruling and second, establish a meaningful record for appellate review."  *State v. Dodson*, 219 Wis. 2d 65, 73, 580 N.W.2d 181 (1998).   The party

---

[2] On appeal, Hall challenges the circuit court's decision to exclude only the "text messages between [Gianna] and an older girl."  Hall does not challenge the court's decision to exclude the other text messages referenced in his pretrial motion that the court concluded would be used for an impermissible purpose of attacking Gianna's credibility.  *See State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998) (outlining the other-acts evidence analysis).  Additionally, all of the "notes" on Gianna's cell phone that referenced her father, Clara, and Hall that were referenced in Hall's pretrial motion, appear to have been admitted at trial.

[3] Citing *State v. McAttee*, 2001 WI App 262, 248 Wis. 2d 865, 637 N.W.2d 774, the State argues that "it was Hall's responsibility to ensure a complete record for this [c]ourt to evaluate [his text messages argument], and this [c]ourt must assume any materials absent from an incomplete record support the circuit court's decision."  However, the rule stated in *McAttee* is that when a record is established in the circuit court, it is the appellant's responsibility to submit the relevant record to this court on appeal.  *Id.*, ¶5 n.1; *see also Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993); WIS. STAT. RULES 809.15(1), 809.19(1)(d), (e).  In a situation where an evidentiary issue is not adequately preserved in the circuit court, the question becomes whether an appellant complied with WIS. STAT. § 901.03(1).  *See State v. Jackson*, 2014 WI 4, ¶¶71, 75-80, 352 Wis. 2d 249, 841 N.W.2d 791.

proffering evidence bears the burden to make an offer of proof to preserve the evidentiary issue for appeal. *See State v. Winters*, 2009 WI App 48, ¶19, 317 Wis. 2d 401, 766 N.W.2d 754.

¶10 An "offer of proof need not be stated with complete precision, but it must state an evidentiary hypothesis supported by a sufficient statement of facts to warrant the conclusion that the court is asked to make." *State v. Dunlap*, 2002 WI 19, ¶15, 250 Wis. 2d 466, 640 N.W.2d 112. "The offer of proof must enable the reviewing court to act with reasonable confidence that the evidentiary hypothesis can be sustained." *State v. Robinson*, 146 Wis. 2d 315, 328, 431 N.W.2d 165 (1988). To make an offer of proof where "documents are involved, the best course is to have the documents marked as exhibits and incorporated into the record for purposes of appeal." 7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 103.3 (4th ed. 2023).

¶11 While there sometimes are evidentiary issues that are "easily resolved by statements of counsel" only, this is not such a case. *See Dodson*, 219 Wis. 2d at 73-74. By Hall's trial counsel's own admission, there was "a lot of information" in the text messages. Yet, Hall's trial counsel described only generally why the text messages would be helpful to the defense.

¶12 Contrary to Hall's assertion on appeal, the above references were not enough to make an offer of proof in this case. Many factual questions remained (and still remain) about the text messages that would affect our review of the circuit court's decision finding them inadmissible. For example, when were the text messages sent? Were the text messages in which Gianna voiced her

frustration between her and the older girl, or were they between Gianna and someone else? Who was the older girl?[4] Did Clara and Hall specifically ban Gianna from speaking with the older girl? If so, when was the ban put into place in relation to May 14, 2017?

¶13 The necessity for the circuit court to actually know and review the substance of the text messages is even more apparent from the different manners in which Hall has characterized the text messages. For example, in Hall's motion for postconviction relief, he described the text messages between Gianna and the older girl as "inappropriate." Conversely, on appeal, he states that the text messages reveal that Gianna simply had a "crush" on the older girl and that their relationship was not sexual in nature.

¶14 Without copies of the text messages—or, at the very least, a more robust and descriptive summary of the text messages—we cannot determine whether the circuit court erroneously exercised its discretion in finding the messages were inadmissible because they violated the rape shield law. *See* BLINKA, *supra*, § 103.3 n.4; ***Jackson***, 352 Wis. 2d 249, ¶¶75-80; *cf.* ***State v. Hinz***, 121 Wis. 2d 282, 289-90, 360 N.W.2d 56 (Ct. App. 1984) (concluding that despite defense counsel's failure to include proffered evidence (a chart) in the record for an offer of proof, counsel had sufficiently made the substance of the evidence known to the circuit court to preserve the issue for appeal). In all, we conclude that Hall did not make a sufficient offer of proof as to the text messages and he has thus not preserved the issue for appeal.

---

[4] At the first pretrial motion hearing, Hall did once mention an individual by name who was described as Gianna's "friend." It is unclear from the record if this is the same individual identified as the older girl.

¶15    Hall's constitutional argument that he was prevented from presenting a defense based upon the circuit court's exclusion of the text messages also fails. We note, again, that Hall did not adequately make an offer of proof as to the contents of the text messages. Nevertheless, based on the record before us, Hall failed to demonstrate that his right to present a defense was violated. In addition to complying with the rules of evidence, "[e]videntiary rulings must also comport with a criminal defendant's constitutional right to present a defense." *State v. Munford*, 2010 WI App 168, ¶28, 330 Wis. 2d 575, 794 N.W.2d 264. To establish that he or she was constitutionally deprived of the ability to present a defense, a defendant must show that: (1) "the proffered evidence was 'essential to' the defense"; and (2) "without the proffered evidence, the defendant had 'no reasonable means of defending his [or her] case.'" *State v. Luther Williams*, 2002 WI 58, ¶70, 253 Wis. 2d 99, 644 N.W.2d 919 (citation omitted). "Whether an evidentiary ruling infringes upon a criminal defendant's right to present a defense is a question of constitutional fact for independent review." *Id.*

¶16    The text messages were not "essential" to Hall's defense nor was he left with "no reasonable means of defending his case." *See id.* (citation omitted). First, Hall was not prohibited from admitting the text messages related to the cell phone restrictions—the circuit court only prohibited the admission of the text messages related to the older girl. Additionally, the court's ruling did not prevent Hall from asking Gianna if or why she was upset with the cell phone restrictions.

¶17    Second, "the jury heard several other pieces of evidence that supported [Hall]'s theory" of defense that Gianna "fabricated" the allegations because she was upset with Clara and Hall's "rules of the home." *See id.*, ¶71. For example, Hall testified that he told Gianna on the night of the alleged sexual that he and Clara had decided to take her cell phone away for the summer due to

8

"problems" with the device. He also testified that he told Gianna that he and Clara were considering "moving [Gianna] to her father's for at least the summer" due to her recent behavioral issues. According to Hall, this conversation upset Gianna. Hall stated that the disciplinary decision to take Gianna's cell phone could have been a motivation for her to fabricate a sexual assault allegation. Hall's testimony regarding Gianna's agitation with his and Clara's actions was corroborated by an exhibit depicting a note that Gianna wrote on her phone.

¶18 In addition, Gianna testified that her father had once hit her in the back. A second note on Gianna's cell phone was admitted at trial in which Gianna threatened her father, stating, "If you ever touch me again you're [sic] life will turn to shit quick, lose your job, custody of your children, n [sic] your wife will most likely leave you. Hope you rot in hell, God can't save you at this point." During closing argument, Hall highlighted all of the above evidence to explain why Gianna would fabricate a sexual assault allegation against Hall, and how she had threatened her father in the past with reporting incidents to the authorities. Thus, the text messages related to the older girl were not "essential" to Hall's defense nor was he left with "no reasonable means of defending his case." *See **id.*** (citation omitted).

B.     Failure to adjourn the trial to allow for Travis's testimony

¶19 Next, Hall contends that the circuit court erred when it did not adjourn the jury trial a third time in order to allow Hall's son, Travis—who lived at the home with Hall, Gianna, and Clara from January 2017 to April 2017—to testify about Gianna's behavioral issues leading up to May 14, 2017, including his statement to Hall that Hall should install security cameras in the home due to

Gianna's behavior. Hall also argues that Travis's failure to testify deprived Hall of his constitutional right to present a defense.

¶20 Hall was charged in May 2017, and his trial was originally scheduled to begin on March 15, 2018. Prior to the motion for adjournment at issue here, Hall's trial had been adjourned twice, once for discovery issues and once for Hall's first trial attorney's "pressing family matter." On April 11, 2018, Hall, through his second trial counsel, sought an order for a continuance because Travis was unavailable to testify due to his military deployment. Alternatively, Hall's motion sought an order permitting Travis to testify by telephone.

¶21 After arguments from counsel, the circuit court determined that it would not adjourn the trial.[5] First, the court noted that it had previously adjourned the trial on two occasions. Second, the court determined that Hall's latest adjournment motion was the first time Travis's name had been brought up and that Travis had been unavailable for "some time."[6] Third, the court addressed the unimportance of Travis's testimony in general, stating that Travis's proposed testimony about how Hall should install security cameras in the home was

---

[5] At first glance, it appears that Hall does not challenge the circuit court's decision to deny his adjournment request; instead, he argues that the court erroneously exercised its discretion when it determined that Travis's testimony was not relevant. However, the State argues that "Travis's testimony was never ordered *excluded* as Hall implies." According to the State, the court never ordered that Travis could not testify about Gianna's behavioral issues. In reply, Hall states, "But the circuit court misused its discretion in excluding [Travis's] testimony, and Mr. Hall applies the same argument to the court's exercise of discretion in denying the continuance." Given the court's statements at the motion hearing, we agree with the State that the court was attempting to discern Travis's importance to the trial and whether it should adjourn the trial a third time in order to allow Travis to testify.

[6] The circuit court knew of the latter fact because Travis had made a request "before he left for the handling of the bond money that he posted" for Hall. Specifically, Travis requested on January 12, 2018, that the bond be signed over to another individual because he was being deployed later that month.

10

"absolutely irrelevant." In addition, the court found that Travis's observations of Gianna's behavior—swearing, being angry, etc.—were irrelevant. The court reasoned that it could not understand how Gianna's behavior at home could "somehow be extrapolated to her making up a false accusation." The court told Hall's trial counsel that it would "need more than that if you want me to postpone a trial that's already been postponed twice."

¶22 We agree with the State that the circuit court did not erroneously exercise its discretion by denying Hall's adjournment request. "The decision whether to grant or deny an adjournment request is left to the [circuit] court's discretion and will not be reversed on appeal absent an erroneous exercise of discretion." *State v. Leighton*, 2000 WI App 156, ¶27, 237 Wis. 2d 709, 616 N.W.2d 126. In exercising its discretion to adjourn or not adjourn a trial for a party to procure a witness, a court should consider "whether the testimony of the absent witness is material, whether the moving party has been guilty of any neglect in endeavoring to procure the attendance of the witness, and whether there is a reasonable expectation that the witness can be located." *State v. William Williams*, 2000 WI App 123, ¶15, 237 Wis. 2d 591, 614 N.W.2d 11 (citation omitted). A party's "failure to make a satisfactory showing on one or more of the three considerations is grounds for denying … a continuance." *Id.*

¶23 Even if Travis's anticipated testimony about Gianna's behavior and the security cameras was admissible, it was not material to Hall's defense. *See id.*, ¶16; *Elam v. State*, 50 Wis. 2d 383, 390, 184 N.W.2d 176 (1971). As explained in the previous section, there was ample evidence before the jury as to Gianna's behavior prior to May 14, 2017; thus, Travis's testimony would have been cumulative. *See Elam*, 50 Wis. 2d at 390 (concluding that testimony is material "where the absent witnesses are the only ones who can give such evidence and

their testimony would not be merely cumulative"). Furthermore, as the circuit court noted in its oral ruling, Travis had been unavailable for "some time," yet his unavailability was not brought to the court's attention until the third motion requesting adjournment.

¶24 Additionally, the circuit court's decision to deny Hall a third adjournment did not deprive him of his constitutional right to present a defense. Hall argues that Travis's testimony refuted other testimony that Gianna cried and was upset when she reported the sexual assault and that his testimony "would have presented the jury with an alternative theory: [Gianna] would cry and act upset in order to get her way." Specifically, he cites to Travis's interview with a private investigator in which Travis stated that Gianna would "have tantrums" when she did not get her way.

¶25 Travis's testimony was not "material" to Hall's theory of defense, *see William Williams*, 237 Wis. 2d 591, ¶16; it was therefore not "essential" to Hall's theory of defense, *see Luther Williams*, 253 Wis. 2d 99, ¶70. There was ample evidence before the jury as to Gianna's behavior prior to May 14, 2017, as well as ample evidence of any possible motivations for Gianna to fabricate an allegation against Hall. As described previously in this opinion, Hall had "reasonable means of defending" his case and presenting his theory of defense. *See id.*

## II. Ineffective assistance

¶26 Hall next contends that his trial counsel, Attorney Shirlene Perrin, was constitutionally ineffective in ten ways and that the circuit court erred by not

12

granting him a new trial following a *Machner*[7] hearing. He also argues that the cumulative effect of Perrin's purported deficiencies prejudiced his defense.

¶27 To demonstrate ineffective assistance of counsel, a defendant must meet two prongs. First, he or she must show that his or her attorney's performance was deficient and, second, that the deficient performance prejudiced the defense. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. "Establishing that counsel's performance was deficient 'requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed … by the Sixth Amendment.'" *Id.*, ¶28 (citation omitted). "[T]o prove prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different.'" *Id.*, ¶32 (citation omitted). We need not address both prongs if we determine that the defendant failed to meet his or her burden on one prong. *Id.*, ¶25.

¶28 Whether a defendant was denied the effective assistance of counsel is a question of constitutional fact. *Id.* "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." *Id.* (citation omitted).

---

[7] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

A.    Text messages

¶29    Hall argues that Perrin was constitutionally ineffective for failing to "elicit" the text message evidence regarding Gianna and the older girl "after the [S]tate opened the door" when it asked Hall what he had heard during trial that "suggest[ed] to [him] that [Gianna] had any reason" to fabricate the sexual assault.[8]

¶30    We conclude that the State did not "open the door" to the admission of the text messages. "[T]he curative admissibility doctrine, commonly referred to as 'opening the door,'" "is applied when one party accidentally or purposefully takes advantage of a piece of evidence that would normally be inadmissible." *Dunlap*, 250 Wis. 2d 466, ¶14 (citation omitted).

¶31    As the circuit court articulated, Hall was free to "have told the jury that [Gianna] made up the monstrous story because he and [Clara] took away the phone for the summer, which Mr. Hall had earlier described as [Gianna's] most precious possession." Additionally, as the court noted, Hall could have also testified that Gianna fabricated the sexual assault because Hall and Clara were considering sending Gianna to her father's home for the summer. The text messages were not needed to support Hall's theory of defense, and he could have testified on cross-examination to the admissible evidence supporting such a

---

[8] Hall also asserts that Perrin should have "properly" objected to the State's question regarding Gianna's motive. However, Perrin did twice object to the State's question. First, Perrin objected as to the form of the question. After a sidebar, the circuit court overruled the objection. After the State asked the question again, Perrin objected a second time, stating, "I'd like to make an objection on the record again." The court again overruled the objection. Hall does not provide an alternative basis to which Perrin could have objected. Thus, Perrin did not perform deficiently by not objecting in another manner.

theory. Because we conclude that Perrin did not perform deficiently, we need not reach the second prong of the ineffective assistance of counsel analysis.

### B. Hall's pre-arrest behavior

¶32 Next, Hall contends that Perrin was constitutionally ineffective by failing to object to trial testimony regarding Hall's pre-arrest behavior. "It is well established that evidence of flight and resistance to arrest has probative value as to guilt." *State v. Miller*, 231 Wis. 2d 447, 460, 605 N.W.2d 567 (Ct. App. 1999). "Analytically, flight is an admission by conduct. The fact of an accused's flight or related conduct is generally admissible against the accused as circumstantial evidence of consciousness of guilt and thus of guilt itself." *State v. Winston*, 120 Wis. 2d 500, 505, 355 N.W.2d 553 (Ct. App. 1984); *see also* WIS JI—CRIMINAL 172 (2000).

¶33 Prior to trial, Hall's original trial counsel argued that any reference to Hall's pre-arrest behavior should be suppressed. In response, the circuit court stated that it wanted to question the witness who would testify about Hall's pre-arrest behavior outside the presence of the jury so that the court could understand what exactly the witness would say. At trial, however, the court never questioned the witness outside the presence of the jury.

¶34 Sergeant Tim Kufus of the St. Croix County Sheriff's Office testified that following his interview with Gianna and a conversation with Clara, he went to Hall's home on May 15, 2017, in an attempt to speak with Hall. Because Hall was not home, Kufus later called Hall by telephone at around 9:00 p.m. that night. According to Kufus, Hall agreed to meet with him that night in Hudson at around 9:30 p.m. Hall did not show up at the planned time, and Kufus attempted to call him "several times." Hall eventually called back at 9:48 p.m.,

and Hall informed Kufus that "he was now on his way to his son's home in Hastings, Minnesota, and he wished to meet [Kufus] the next day." Kufus informed Hall that he would prefer to meet him that night, and Hall agreed. Hall stated that "because of the anxiety he was having at that time, he needed to close his eyes for 15 minutes and then he would go to Hudson to meet [Kufus]." At around 11:00 p.m. that night, Hall called and informed Kufus that he was near Hudson, the two of them met shortly thereafter, and Kufus arrested Hall. Perrin did not object to any of this foregoing testimony.

¶35 During a jury instruction conference at the close of evidence, the State requested a jury instruction on Hall's "flight." During its ruling on the State's request, the circuit court stated that there were "competing interpretations" concerning Hall's pre-arrest behavior but "that's up to the attorneys to argue" which interpretation was correct. The court concluded that the jury instruction "tells the jury that they are entitled to consider that and factor it into the ultimate questions that they are being asked to answer," and provided the instruction.[9] In its ruling on Hall's motion for postconviction relief, the court acknowledged that it did not question Kufus prior to his trial testimony as discussed at the previous pretrial hearing, but that, regardless, Hall's pre-arrest behavior was relevant and that the State's requested jury instruction regarding that behavior would have been given to the jury either way. Thus, the court concluded that Perrin did not perform deficiently.

---

[9] Specifically, the circuit court instructed the jury, "Evidence has been presented relating to the defendant's conduct after the alleged crime was committed. Whether the evidence shows a consciousness of guilt and whether consciousness of guilt shows actual guilt are matters exclusively for you to decide." *See* WIS JI—CRIMINAL 172 (2000).

16

¶36    We agree with the circuit court's analysis as to the relevancy of Hall's pre-arrest behavior. The court did not erroneously exercise its discretion by allowing Kufus and Hall to testify regarding Hall's delay in meeting Kufus after Gianna reported the sexual assault, and permitting the properly instructed jury to determine whether that delay showed Hall's consciousness of guilt. Perrin, therefore, did not perform deficiently by not objecting to the testimony.

¶37    Here, Hall's pre-arrest behavior was relevant to whether he was guilty. Although Hall had no legal obligation to meet with Kufus, the circuit court reasonably concluded, by presenting the State's requested jury instruction, that Hall's actions could be interpreted as consciousness of guilt. Namely, Hall initially agreed to meet with Kufus but delayed doing so because he was "tired" due to an undiagnosed anxiety disorder that purportedly arises during high-stress situations. He also failed to answer "several" of Kufus's phone calls after not arriving at the scheduled time. Based on that evidence, the jury could reasonably infer that Hall was actually postponing a meeting with Kufus because he was guilty and was debating whether to meet with Kufus, or because he was considering whether to admit guilt or not.

¶38    Of course, the jury could also infer that Hall's pre-arrest behavior was meaningless as to his guilt. As Hall argues on appeal, he *did* agree to meet with Kufus despite the lack of legal obligation and he, arguably, apprised Kufus of his location and timing. However, that is not the only reasonable interpretation of the evidence presented at trial. Because Hall's pre-arrest behavior was relevant and admissible, Perrin was not constitutionally deficient for failing to object to the

State's examination of Kufus.[10]  *See State v. Maday*, 2017 WI 28, ¶55, 374 Wis. 2d 164, 892 N.W.2d 611.

C.    Hall's "grooming" behavior

¶39    Next, Hall asserts that Perrin was constitutionally ineffective because she failed to object to five areas of the State's questioning at trial related to Hall's "grooming" behavior toward Gianna and Gianna's friend, Bethany. Specifically, he argues that Perrin should have objected to testimony regarding: (1) Hall gifting Gianna a rock; (2) Hall gifting Gianna and Clara lilacs on May 15, 2017; (3) Hall stating to Gianna, at some undetermined time, that her "butt looks good"; (4) Hall giving Bethany a shoulder massage; and (5) Hall asking Bethany for her cell phone number.

---

[10] Hall also raises an argument on appeal that the circuit court erroneously instructed the jury using the flight instruction. Because we conclude that Hall's pre-arrest behavior was relevant and admissible, we also conclude that the court properly exercised its discretion in instructing the jury. *See State v. Hubbard*, 2008 WI 92, ¶28, 313 Wis. 2d 1, 752 N.W.2d 839 ("A circuit court has broad discretion in deciding whether to give a requested jury instruction." (citation omitted)).

Hall cites *United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977), which he argues supports his position that the circuit court erroneously instructed the jury. In *Myers*, the federal appellate court articulated a four-part test to determine whether a flight instruction is appropriately given to a jury when actual flight is concerned. *Id.* at 1049. Hall fails to cite to any Wisconsin case, nor has this court located such a case, that has adopted the *Myers* test.

The Wisconsin Jury Instruction Committee cited *Myers* for the proposition that "flight evidence is probative of guilt only insofar as it indicates a consciousness of guilt and insofar as consciousness of guilt indicates actual guilt. The uniform instruction tries to state this connection in a forthright manner." WIS JI—Criminal 172 (2000) (citations omitted). The instruction reads, "Evidence has been presented relating to the defendant's conduct after the alleged crime was committed. Whether the evidence shows a consciousness of guilt, and whether consciousness of guilt shows actual guilt, are matters exclusively for you to decide." *Id.* Thus, insofar as the committee's comments are persuasive to this court, it is clear that the committee was not attempting to implement the four-part test articulated in *Myers*. The instruction clearly encompasses behavior aside from direct flight. We are therefore unpersuaded by Hall's reliance on *Myers* to apply the four-part test here.

¶40    Regarding the rock, Gianna testified that Hall gave her a "rock one time." According to Gianna, the rock came with a letter in which Hall wrote something along the lines of "if you cut into it, there could be, like, crystals or, like, a special color inside." Gianna further testified that Hall "described how that kind of explains [Gianna], how [she is] like tough on the outside." Gianna explained that Hall stated that "when you get to know [her, she is] like, pretty, I guess, or beautiful on the inside." Hall testified that he thought the rock was a geode and that he gave it to Gianna as a present. He denied telling Gianna that the rock was "hard on the outside and soft on the inside" like Gianna.

¶41    Regarding the lilacs, Gianna testified that when she arrived home from the sheriff's department on May 15, 2017, she found lilacs in a coffee mug on her nightstand. On direct examination, Hall admitted to gifting the lilacs to Gianna but he stated that he did so on Mother's Day—i.e., the day before the sexual assault accusation. He also stated that he gave Clara flowers on that day as well and put them on Clara's nightstand. Hall testified that he regularly brought flowers into the home from "two different flowering bushes" on the home's property.

¶42    Regarding Hall's comment to Gianna about her body, Gianna testified that Hall told her "[o]ne time" while walking up the stairs that her "butt looks good" (the "body comment"). Gianna testified that she thought the comment "was really weird." Hall denied making the comment to Gianna but admitted that he told her she was "pretty" on numerous occasions, based upon Gianna having self-image issues.

¶43    Regarding Hall giving Bethany a shoulder massage and asking her for her cell phone number, Bethany testified that on a trip to a mall with Hall and

19

Gianna, Hall asked for her cell phone number. Specifically, while traveling to the mall, the three were discussing "how [Hall was] going to be leaving [Gianna's] mom during that summer, and … he said that he wanted to keep in contact with me and [Gianna], so he would ask for [my cell] phone number." Bethany also testified that at Chipotle "one time," while the three of them were standing in line, Hall joked that he did not really like her, "and then he started laughing. He said, 'I'm just kidding. I love you.' And then he, like, massaged my shoulders kind of." Hall denied giving Bethany a massage. He also explained that he asked for Bethany's cell phone number because he wanted to have contact information for those with whom Gianna was hanging out.

¶44    At the *Machner* hearing, Perrin testified that she did not recall why she did not object to any of the State's questions regarding the alleged grooming incidents described above.[11]  Perrin did, however, state that not objecting to some of the State's questions—specifically, the lilacs, the rock, and the cell phone number questions—allowed her to characterize the State's evidence as "overreaching."

¶45    We agree with the circuit court and conclude that the evidence regarding the rock, the body comment, and the lilacs was admissible as "panorama" evidence. Thus, Perrin did not perform deficiently for failing to object to the State's elicitation of that evidence. *See Maday*, 374 Wis. 2d 164, ¶55. "Evidence is not 'other acts' evidence if it is part of the panorama of

---

[11] Outside the presence of the jury, Perrin argued that Gianna's and Bethany's testimony regarding the "butt looks good" comment and the massage should not have been admitted into evidence. We therefore interpret Hall's argument on appeal to be that Perrin should have objected to the testimony at the time the evidence was heard by the jury.

evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime." ***State v. Dukes***, 2007 WI App 175, ¶28, 303 Wis. 2d 208, 736 N.W.2d 515. "[S]imply because an act can be factually classified as 'different'—in time, place and, perhaps, manner than the act complained of—that different act is not necessarily 'other acts' evidence in the eyes of the law." ***Id.*** (citation omitted).

¶46     The evidence here was not submitted to demonstrate that Hall "had a propensity to sexually assault children." *See **State v. Sullivan***, 216 Wis. 2d 768, 783, 576 N.W.2d 30 (1998). Instead, it was submitted to "completely describe" how Hall treated Gianna before and after the sexual assault. *See **Dukes***, 303 Wis. 2d 208, ¶28. It involved the relationship between Hall and Gianna and "traveled directly to the State's theory" that Hall "groomed" Gianna. *See **State v. Jensen***, 2011 WI App 3, ¶85, 331 Wis. 2d 440, 794 N.W.2d 482 (2010). Under the State's theory, the grooming behavior was inextricably intertwined with the sexual assault, and was material evidence, particularly because there was no physical evidence of the assault and the trial largely centered on witness credibility. *See **Dukes***, 303 Wis. 2d 208, ¶28.

¶47     Hall rhetorically contends that if the evidence regarding the rock, the body comment, and the lilacs was admissible as panorama evidence, then "what evidence would be excluded?" In support, Hall offers hypothetical examples of the bounds of the rule regarding panorama evidence, such as whether evidence that Hall had bought Gianna a video game for Christmas would be admissible.

¶48     Hall overlooks the rule that in order to be admissible, evidence must be relevant and its probative value must not be substantially outweighed by the unfair risk of prejudice or confusion of the issues. *See* WIS. STAT. §§ 904.02,

904.03. Here, all three incidents were decidedly relevant to whether Hall groomed and then sexually assaulted Gianna. In particular, there was evidence that the lilacs and the rock were not given as celebratory gifts (e.g., a Christmas or birthday present), but instead to gauge Gianna's reaction. Similarly, the body comment was clearly relevant to whether a sexual assault occurred, as it evidences Hall's physical attraction to Gianna.

¶49    Moreover, the evidence's probative value was not substantially "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *See* WIS. STAT. § 904.03  There was little to no risk of the jury convicting Hall simply because he gave gifts to Gianna or, although abhorrent, commented on her body. Even if the jury believed that Hall gave the gifts to Gianna, it still had to go the extra step of finding beyond a reasonable doubt that he sexually assaulted her. Thus, the evidence regarding the rock, the body comment, and the lilacs was admissible, and Perrin did not perform deficiently by failing to object to the State's questions regarding that evidence. Because Perrin did not perform deficiently, we need not reach the second prong of the ineffective assistance analysis.

¶50    The State concedes on appeal that the evidence related to Bethany was inadmissible and that Perrin should have objected to it. Assuming without deciding that the State's concession is legally accurate, we agree with the circuit court and the State that this deficiency was not prejudicial to Hall. That is, Hall failed to show that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *See Savage*, 395 Wis. 2d 1, ¶32 (citation omitted).

22

¶51    As the circuit court explained, Bethany's testimony about the cell phone number and shoulder massage was brief and isolated. We do note, however, that the State also brought the jury's attention to Bethany's testimony regarding the shoulder massage in its rebuttal closing argument. Specifically, the State, when discussing Hall's "grooming behavior," said, "I want to hang out with your friend. In fact, I want [Bethany's] phone number so when I'm not around, we can still hang out, because that's not weird; right?" However, this reference was also isolated and not otherwise highlighted during the closing argument. Moreover, the State never linked Bethany's testimony to the commission of a crime or to any witnesses' credibility, other than Hall. Like the circuit court, we are not "persuaded that calling [Hall's] behavior weird degraded his credibility or that it had an impact on the outcome of the trial."

¶52    Furthermore, Hall expressly denied the shoulder massage and also gave context to Bethany's testimony regarding the phone number request. In addition, Bethany's testimony concerning the shoulder massage could be seen, as the circuit court found, as hurting the State's theory that Hall used massages as a segue to sexually assault Gianna. There was no evidence presented at trial that Hall attempted to groom Bethany.

D.    Limiting jury instruction

¶53    Next, Hall argues that Perrin was ineffective because she failed to request a limiting jury instruction, WIS JI—CRIMINAL 275 (2018) ("Cautionary Instruction: Evidence of other conduct"). Hall does not specifically state to which evidence the limiting instruction would apply, other than referring to "grooming/propensity" evidence generally. We will assume for purposes of this opinion that Hall is referencing *all* of the "grooming" evidence admitted at trial,

not only the evidence complained of above. This evidence included a conversation Hall had with Gianna about his "past sexual relationships with [her] mother and other women," a conversation in which Hall showed Gianna a "partially nude photograph of another woman," and evidence that Hall gave Gianna massages and told "her to remain silent about them."

¶54 At trial, while discussing the body comment and the shoulder massage testimony outside the presence of the jury, Perrin stated that she did not object to the testimony because she thought objecting "would do more damage than good by highlighting it, frankly; so that was a strategic decision, but I do think it was inappropriate and against" the circuit court's pretrial order. The court stated, "I mean the evidence came in without objection, so I can't take it back." Perrin stated that she would ask for a limiting instruction and "be more specific about that request" when the time came to discuss jury instructions, however, she never followed up on her request.

¶55 The limiting jury instruction at issue is applicable only to other-acts evidence. *See* WIS JI—CRIMINAL 275 (2018) ("This instruction is for use where evidence of other crimes or other acts committed by the defendant is admitted for an acceptable purpose under [WIS. STAT.] § 904.04(2)(a)."); *see also* WIS. STAT. § 901.06; *State v. Payano*, 2009 WI 86, ¶100, 320 Wis. 2d 348, 768 N.W.2d 832. Because the evidence of Hall's "grooming" behavior was not other-acts evidence, Perrin did not perform deficiently by failing to request the instruction. Similarly, we agree with the circuit court that any deficiency in failing to request the limiting instruction for the two pieces of evidence related to Bethany was not prejudicial to Hall for the same reasons articulated in the previous subsection. *See supra* ¶¶50-52.

E.     Clara's cross-examination by the State

¶56     Hall next asserts that Perrin was ineffective by failing to object to the State's questions to Clara regarding her prior romantic relationships, living arrangements, and commitment to her career.  Specifically, Hall takes issue with questions the State asked regarding Clara's long work hours and weekend work schedule and Clara's previous relationships prior to meeting Hall.

¶57     At the ***Machner*** hearing, Perrin testified that she thought that the testimony about Clara's work schedule might be helpful to the defense for the jury to know because it showed "how often [Hall] was alone with [Gianna] and that it didn't make sense that he was alone with her so much but then the allegation was [that the sexual assault occurred] right outside [Gianna's] mother's bedroom door when her mother was there."  The circuit court determined that the testimony regarding Clara's work schedule was relevant because it explained how Hall and Gianna spent time alone without Clara present.

¶58     We agree that the evidence related to Clara's work schedule was relevant to explain Hall and Gianna's relationship.  In addition, Perrin's strategy—to argue that it made little sense why Hall would sexually assault Gianna while her mother was a few feet away, as opposed to when her mother was not home (which was frequently the case)—was reasonable.  *See **State v. Breitzman***, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93.  Hall does not argue to the contrary.

¶59     Moreover, any evidence regarding Clara's past relationships or living arrangements was not prejudicial to Hall because it in no way related to the events that occurred in May 2017.  While Hall argues that the evidence made Clara look like a bad mother and suggested that she was the kind of mother who "would make poor choices including dating a man who would commit a sexual

assault," this argument is undeveloped and conclusory. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). His argument regarding the jury's perception of Clara is also irrelevant—she was not on trial.

F.    The State's closing argument

¶60    Hall also asserts that Perrin was ineffective by failing to object to three statements the State made during its closing arguments. First, Hall contends that Perrin should have objected to the State's closing argument rebuttal when it argued, "But what was the intention behind the rock? As [Hall] indicated with his note and what [Gianna] said was in the note, it's *tough on the outside like you, but soft and pretty on the inside*…. That's a love letter, ladies and gentlemen." (Emphasis added.) According to Hall, the State "misstated" Gianna's actual testimony, which was that Hall gave her the rock with a letter that said something along the lines of, "if you cut into it, there could be, like, crystals or, like, a special color inside. And then he described how that kind of explains [Gianna], how [she is] like *tough on the outside*." Further, Gianna stated that Hall wrote, "when you get to know [her, she is] like, pretty, I guess, *or beautiful on the inside*." (Emphasis added.) This misstatement, according to Hall, asked the jury to "draw an improper, sexual inference."

¶61    Hall's argument regarding the rock and the State's closing argument is undeveloped and supported only by conclusory allegations. *See Pettit*, 171 Wis. 2d at 646-47. Hall fails to explain how the seemingly miniscule difference between the State's summary and Gianna's testimony was a "misstatement" that warranted an objection. Although the State did not restate Gianna's testimony verbatim, there was no "misstatement." In referencing what Hall's letter said, Gianna stated that Hall used the word "tough" to describe the outside of the rock,

as well as her exterior personality. Also, Gianna said that Hall used the word "pretty" to describe the inside of the rock, as well as her inner personality. The addition of the word "soft" does not move the State's summary into improper territory warranting an objection. As the circuit court found, the "words 'soft on the inside' w[ere] not overtly sexual or suggestive of any sexuality and the State never used [those words] in such a way." Thus, nothing about the State's reference to the rock or the letter was objectionable, and Perrin therefore did not perform deficiently by failing to object.

¶62     Second, Hall contends that Perrin should have objected to the State's closing argument when the State argued, "I would love to see the evidence of [Gianna's behavioral issues], wouldn't you? We didn't see any of it. If anything, they talked about grades. That's not behavior issues. That's just normal teenage stuff." The circuit court determined that Perrin was not deficient by not objecting to this argument because the "State's comments criticized the weight of that evidence, which the State may do."

¶63     According to Hall, the State's closing argument violated the principle that it "may not ask jurors to draw inferences that they know or should know are not true." *See **State v. Weiss**, 2008 WI 72, ¶15, 312 Wis. 2d 382, 752 N.W.2d 372. He argues that the State "asked the jury to draw an improper inference that there was no evidence of [Gianna's] behavior issues despite the fact that the State knew its opposition to the admission of such evidence is what prevented the jury from hearing it."

¶64     Even if we assume, without deciding, that the State improperly commented on the lack of behavioral evidence in its closing argument, "the statements alone will not be cause to overturn a conviction. Rather, the statements

must be looked at in context of the entire trial." *See State v. Hurley*, 2015 WI 35, ¶96, 361 Wis. 2d 529, 861 N.W.2d 174 (citation omitted). The due process clause requires that for a prosecutor's statements to constitute reversal error, those statements must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*, ¶96 (citation omitted). Here, the State's reference was brief and isolated and it was countered by the defense in its closing argument. Conversely, in *Weiss*, the State made at least ten separate improper comments during its closing argument. *Hurley*, 361 Wis. 2d 529, ¶101 (citing *Weiss*, 312 Wis. 2d 382, ¶¶5, 7). Thus, Perrin did not perform deficiently by failing to object.

¶65 Next, Hall asserts that Perrin should have objected to the State's closing argument when it argued, "One would think maybe you would be frozen in place or you would run to the sheriff's department to declare your innocence. That didn't happen, did it? He drove around." Again citing to *Weiss*, Hall argues that the State's comment "asked the jury to infer that [his] failure to immediately turn himself in was evidence of guilt." We concluded above that evidence regarding Hall's pre-arrest behavior was admissible. Nothing in *Weiss* required an objection to the State's comment on Hall's pre-arrest behavior. Therefore, Perrin did not perform deficiently by failing to object.

¶66 In addition, Hall contends that the cumulative effect of Perrin's deficiencies prejudiced his defense. The only potential deficiencies we have identified on appeal are Perrin's failures to: (1) object to the State's questioning of Bethany regarding the shoulder massage and cell phone number; and (2) object to the State's closing argument statement that Gianna's only poor behavior related to grades.

¶67 "[A] convicted defendant may not simply present a laundry list of mistakes by counsel and expect to be awarded a new trial." *State v. Thiel*, 2003 WI 111, ¶61, 264 Wis. 2d 571, 665 N.W.2d 305. "[I]n most cases errors, even unreasonable errors, will not have a cumulative impact sufficient to undermine confidence in the outcome of the trial …." *Id.* Such is the case here. Bethany's testimony was extremely isolated and brief. Similarly, the State's closing argument related to Gianna's alleged poor behavior was brief and isolated. For the reasons identified above, even in the aggregate, the potential errors identified do not undermine our confidence in the outcome of the trial. There is not a reasonable probability that had Perrin objected to Bethany's brief testimony and objected to the State's closing argument comment, the result of the proceeding would have been different. *See Savage*, 395 Wis. 2d 1, ¶32.

## III. Plain error and interest of justice

¶68 Hall argues that the plain error doctrine applies to this case because the State was "allowed to admit extrinsic evidence to discredit" Hall. In support of this argument, Hall cites generally to the "improper propensity evidence" that "tended to show that [he] was the type of person whose actions were motivated by grooming for a sexual assault." He also argues that plain error occurred when the State made "misleading statements during its closing arguments." For this latter argument, Hall points to the State's comment summarizing Gianna's testimony and the State's comment on Hall's pre-arrest behavior. For the same reasons that we have already determined these incidents were not "errors," we conclude that they do not constitute plain error. *See State v. Jorgensen*, 2008 WI 60, ¶¶21-23, 310 Wis. 2d 138, 754 N.W.2d 77; *see also* WIS. STAT. § 901.03(4).

29

¶69  Finally, Hall argues that we should order a new trial in the interest of justice because the jury heard improper evidence which "clouded" the crucial issue in this case—namely, the "credibility contest" between Hall and Gianna. Within our discretionary power, we may reverse a judgment of conviction "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried."  WIS. STAT. § 752.35; *State v. Avery*, 2013 WI 13, ¶23, 345 Wis. 2d 407, 826 N.W.2d 60.  "The power to grant a new trial in the interest of justice is to be exercised 'infrequently and judiciously.'"  *Avery*, 345 Wis. 2d 407, ¶23 (citation omitted).  Any errors in this case were so minimal that we disagree with Hall that the real controversy was not fully tried or that a miscarriage of justice occurred.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.